## 1914.

EDWIN ROBERT WALKER, ORDINARY.

JOHN R. EMERY, FREDERIC W. STEVENS, EUGENE STEVENSON, EDMUND B. LEAMING, JAMES E. HOWELL, VIVIAN M. LEWIS, JOHN H. BACKES AND JOHN GRIFFIN, VICE-ORDINARIES.

In the matter of the estate of CHARLES G. DIAMENT, deceased.

[Submitted January 13th, 1915. Determined January 27th, 1915.]

1. Evidence *held* to support a conclusion of the orphans court that testator had destroyed the third codicil to his will *animo revocandi.*

2. Where a will is proved to have been executed and to have remained in testator's custody, or where he had ready access to it, the fact that it cannot be found after his death raises a presumption that he destroyed it *animo revocandi.*

3. Where one will is revoked by another, the revocation is testamentary, and the revocation of the later will revives the former, since the revoking instrument is itself revocable, and does not become final or absolute until the death of testator.

135

In re Diament's Estate. *84 N. J. Eq.*

4. Testator, in November, 1902, executed a will making a detailed disposition of his entire estate, and in February, 1911, and in December, 1912, executed first and second codicils merely modifying specific parts of the will, and thereafter executed a third codicil revoking the devise in the will to his housekeeper, but in no other way superseding the will, and subsequently withdrew the third codicil from the trust company, where it had been deposited with the will and the first two codicils, and destroyed it *animo revocandi.*—*Held,* that such revocation did not revoke the will and the first two codicils, and that they were entitled to probate.

On appeal from the Cumberland county orphans court.

*Mr. Rex A. Donnelly* and *Mr. John W. Wescott,* proctors for the appellants.

*Mr. James S. Ware,* proctor for certain respondents.

*Mr. LeRoy W. Loder,* proctor for Eva M. Ewan, respondent.

LEAMING, VICE-ORDINARY.

This is an appeal from a decree of the orphans court of Cumberland county admitting to probate three certain instruments in writing; the first as the last will and testament of Charles G. Diament, deceased, and the others as codicils thereto. The will bears date November 12th, 1902, the first codicil February 1st, 1911, the second codicil December 19th, 1912.

A third codicil was executed by testator in the latter part of August or the forepart of September, 1913, and its provisions and proper execution have been adequately established by the evidence taken before the orphans court, but the instrument has not been found and was refused probate as a lost will.

The present appeal is based on the contentions—*first,* that the third codicil should have been admitted to probate as a lost codicil, and *second,* that assuming the evidence adequate to support the finding of the orphans court that it was destroyed by testator *animo revocandi,* its execution and subsequent destruction were operative to revoke the former will and two codicils.

· The conclusion of the orphans court, to the effect that testator destroyed the third codicil *animo revocandi,* is clearly supported by the evidence. After its execution it was left with John S.

Ware, as an officer of the Cumberland Trust Company, for safe keeping by that institution; thereafter testator desired its return to him and one Charles S. Ware, at testator's request, procured it from the trust company and delivered it to testator; testator then asked Charles S. Ware "the best way to annul it," and Mr. Ware replied, "to destroy it." No·justification can be found for doubting the truth of the testimony of Charles S. Ware touching these matters. It thus appears that this third codicil was recalled by testator from its custodian, and as a part of that transaction testator was informed, in response to his inquiry, that its destruction was an adequate means of cancellation. The testimony of Mrs. Ewan, touching its destruction, is subject to question by reason of her vital interest in the controversy; her testimony is to the effect that she saw Mr. Ware hand a paper to testator and that testator then came to the house and burned a paper in the kitchen stove. That testimony cannot, however, be wholly disregarded.

The well-recognized rule in cases of this nature is that when a will is proved to have been executed, and it cannot be found at testator's death, if the will remained in his custody, or after its execution he had ready access to it, the fact that it cannot be found after his death raises a presumption that he had destroyed it *animo revocandi. 30 Am. & Eng. Encycl. L. (2d ed.) 635; Jarm. Wills 133;* see, also, *In re Cunnion, 201 N. Y. 123.* This rule has been expressly adopted by this court. *In re Willett's Estate (Vice-Ordinary Reed), 46 Atl. Rep. 519.* This presumption may be rebutted, but there is in this case no circumstance sufficient to rebut it; the testimony of testator's two sons, touching conversations with their father, is clearly insufficient for that purpose, and the testimony already referred to substantially supports the presumption.

The remaining question is whether the destruction of the third codicil by testator with intention to revoke its provisions is operative to deny probate to the will and two codicils already referred to.

At common law the revocation of a subsequent will which revoked, either expressly or impliedly, an earlier will, left the earlier will unimpaired. The reason for the rule appears to

have been that the revoking will was itself revocable and did not become final or absolute until the death of the testator. In the English ecclesiastical courts, however, the intent of the testator in this respect was a subject of inquiry. In this court Chancellor Runyon, sitting as ordinary, in the case of *Randall* v. *Beatty*, *31 N. J. Eq. 643*, defined the rule in this state as follows: "The true rule on the subject is, that where one will is revoked by another, the revocation is testamentary, and the revocation of the latter will revives the former." In that case, however, the learned ordinary also found evidence of an intention on the part of the testatrix that the earlier will should remain her will. That evidence was found in the circumstance that testatrix destroyed the later will and retained the earlier one until her decease. In a later case, in this court (*Moore's Case, 72 N. J. Eq. 371*), Chancellor Magie, sitting as ordinary, made inquiry into the circumstances of the case to ascertain the intention of testator in revoking the later will, and discovered satisfactory evidence of an intent that the earlier will should not stand as the will of the deceased. In that case, the evidence disclosed that the earlier will had not been retained by testator in a manner indicating a purpose to preserve it, but testator "had practically thrown the paper (the earlier will) away," and it had also been partially burned and rendered in part incapable of being read; furthermore, there was a provision in the earlier will for the wife of testator, and she was dead at the time the later will was destroyed. These several circumstances were held to adequately disclose that when the later will was revoked testator did not intend that the earlier instrument should be his will. As already suggested, the common law regarded the revocation of an earlier will by a later one as a testamentary act and deduced therefrom the rule that it was a necessary conclusion of law that when the later will was revoked the former will would stand, and no proofs were admitted to overthrow that conclusion. But where the testator has destroyed, or has undertaken to physically destroy the former will, as in the *Moore Case*, the situation presented is obviously outside the field of operation of the common law rule; in that aspect the *Moore Case* cannot be properly regarded as a repudiation of the common law rule as stated in *Randall* v.

*Beatty, supra;* but in considering the circumstance of the wife's death prior to the revocation of the later will as a circumstance tending to disclose intent, the *Moore Case* appears to have made the ecclesiastical rule the basis of the decision to that extent.

In the present case, the will of testator, dated November 12th, 1909, makes detailed disposition of his entire estate. By the eighth, ninth and tenth items of that will a life estate in certain real and personal property is given to Mrs. Eva M. Ewan, who was housekeeper for testator, on condition that she remained with him until his decease; at her decease the property was given to testator's heirs-at-law. The will also contains a residuary clause in favor of the heirs-at-law of testator. Neither the first nor second codicil were designed to wholly revoke the will; the provisions of each are modifications of specific portions of the will and are designed to stand with the will as specific modifications thereof. The third codicil, which was destroyed, was of like nature; it revoked the provisions of the will which are in favor of the housekeeper, but in no way revoked or superseded the will except as to the specific items referred to in the codicil. The situation thus presented prior to the destruction of the third codicil was that of an existing will making detailed disposition of all of testator's estate with three successive codicils, each making specific modifications of the will, and each designed to confirm the will as modified by the codicils. It may be that the effect of the destruction of a codicil, so far as the specific provisions of the will to which the codicil relates are concerned, cannot be logically distinguished in principle from the destruction of a subsequent will which expressly or by necessary implication wholly revokes a former will; but when a codicil is regarded as a mere modifying instrument intended only to modify or change specific provisions of a will and designed to stand with the will as a mere amendment to or modification of its provisions, it is difficult to conceive the destruction of the codicil and retention of the will by the testator as other than the adoption of a convenient method of withdrawing or nullifying the amendment, even though no force be given to the underlying principle of the common law rule that a provision for revocation, express or implied, is purely testamentary in its inherent

nature.   In executing such a codicil the intention of testator is that the will and codicil shall be read together; in destroying such a codicil and retaining the will the intention most apparent would seem to be that the will should be read without the codicil. The will here in question has never been revoked, except in so far as the destroyed codicil may be held to have revoked the specific provisions of the will to which that codicil was directed. The will must accordingly be admitted to probate, while the destroyed codicil cannot be admitted to probate because it was destroyed by testator *animo revocandi;* it follows that if it be held that the destroyed codicil was effective in revoking the provisions of the will to which it referred, notwithstanding its revocation by testator, the same effect will be given to the destroyed codicil as though it had not been revoked; such result would attribute no intelligent purpose to the act of destruction.

But should inquiry be made into the intent of testator, the evidence in this case adequately establishes that intent.   The will, and the three successive codicils, were deposited with a trust company by testator for safe keeping.   Subsequently, testator withdrew from the depository the last codicil and destroyed it and permitted the will and two preceding codicils to remain with the depository until his death.   That circumstance appears to be uniformly treated as satisfactory evidence of an intention upon the part of testator to revive a former will which has been preserved by him in that manner.   The evidence also disclosed that shortly before the death of testator he requested the officer of the trust company, already referred to, who had drawn the second and third codicils, to draw another codicil, to make specific disposition of some cash which had come to the hands of testator by reason of a security referred to in the original will having been turned into cash.   This proposed codicil was not executed by reason of the death of testator on the very day it was to be drawn.

I will advise a decree affirming the decree of the orphans court.