In the matter of the probate of the alleged will of MATILDA A. BRYAN, deceased.

[Argued February term, 1939.  Decided April 21st, 1939.]

*Messrs. Cole & Cole,* for the respondents.

*Messrs. Thompson & Hanstein,* for the appellants.

The opinion of the court was delivered by

WOLFSKEIL, J.

This appeal is from an order denying probate of a paper purporting to be a copy of the last will and testament of Matilda A. Bryan, deceased.

The issue is factual so that the present determination rests essentially upon a review of the testimony.  The controversy centers about the testamentary disposition by Mrs. Bryan of her estate.  She was a former actress, who later married, became possessed of considerable wealth and retained it in a substantial degree to her death.  She executed one will on

November 14th, 1934, in which her niece, Helen L. Boyle, was made executrix and chief beneficiary. She made another will on April 30th, 1937, in which the gift to the niece was greatly reduced and a Baltimore trust company was made executor. Proponents sought probate for an unsigned and undated copy of this later will in which they are named as beneficiaries. There was no dispute concerning validity in execution of the 1937 will, but the original was not produced, and no direct proof was advanced to show what happened to it after it was delivered by the lawyer-draftsman to Mrs. Bryan. This lawyer stated that when he inquired of Mrs. Bryan where it could be found in the event of her death she replied that it would be in her safe deposit box at Ventnor, New Jersey. It was not found, and there was no actual proof that anyone saw it after it was given to Mrs. Bryan.

From the evidence it appeared that Mrs. Bryan suffered a stroke in June, 1938, in her winter home in Florida. Mrs. Boyle was with her at the time and immediately took possession of a black bag that Mrs. Bryan used as a container for her papers and valuables and which she always had with her. Moved solely by a desire to protect her aunt Mrs. Boyle removed the bag from the bedroom, examined the contents and found therein a sealed envelope bearing the printed name of an attorney in Baltimore and the typewritten statement that it contained the last will and testament of Mrs. Bryan. After Mrs. Bryan's death the unopened envelope was forwarded to the attorney and found to contain the 1934 will.

The sole issue in this case is the determination of the question: "Did Mrs. Bryan destroy her 1937 will in her lifetime *animo revocandi?*"

Voluminous testimony of detailed incidents, conversations and acts was produced. It appeared indisputable that Mrs. Boyle was favored by the decedent and this was reflected in the 1934 will. Proponents of the 1937 will sought to show that the aunt subsequently disapproved of certain conduct attributed to the niece, stated she was greatly reducing the bequest to her and instead was distributing the bulk of her estate among the others to whom she made these statements. It is alleged that Mrs. Boyle was aware of this and naturally

was interested to avert it. An attempt was made to show that the 1937 will was also in the black bag, accessible to the niece, and must have been destroyed by her since she would have benefited thereby. But the testimony pointing to that conclusion is controverted. There is no proof that the 1937 will was in the black bag nor that Mrs. Boyle destroyed it. That assertion is merely argumentative surmise.

Mrs. Bryan was a woman of positive attributes, possessed of opinions she was quick to assert, but joined with considerable native shrewdness. Expressions of disapproval with regard to the niece' could also be no more than surface friction that occurs among people close together, without lessening the bonds between them. That there was no lasting or serious breach is shown by resumption of their intimacy and the fact that the niece was in friendly visitation at the time of the aunt's death. The statements attributed to Mrs. Bryan and upon which stress was laid, that she proposed a wider distribution of bequests than is indicated in the 1934 will could have proceeded from a canny intention in this way to create a feeling of amiableness among expectant inheritors.

There is disinterested testimony in the case of a compelling character. Mrs. Bryan wrote to a friend, whose husband was a lawyer, inquiring whether destruction by her of the 1937 will would restore the effectiveness of the 1934 will. She received a reply from the lawyer which stated in substance that the first will would stand automatically if the later one was destroyed. This evidence is illuminating in view of the fact that Mrs. Bryan, despite the efforts of witnesses to show that she had changed her mind, nevertheless retained the first will intact.

There is reluctance in a court of review to interfere with findings as to disputed questions of fact by a trial court. *Carton* v. *Phelps, 91 N. J. Eq. 312; Naame* v. *Doughty, 109 N. J. Eq. 535; Morris County Building and Loan Association* v. *Walters, 123 N. J. Eq. 548.* Here this rule is buttressed by the reasonableness of the deductions drawn from the evidence by the trial court.

The law of this state applicable to the establishment of lost wills is well defined. If such a will was last seen in the

custody of the testatrix or she had access to it the fact that it cannot be found after her death raises the presumption that she destroyed it *animo revocandi*. This presumption may be rebutted but in order so to do the evidence must be clear, satisfactory and convincing and the burden is on the proponents. The proof necessary to rebut the presumption of revocation must be sufficient to exclude every possibility of a destruction of the will by the testatrix herself. *In re Willets Estate, 46 Atl. Rep. 519; In re Calef's Will, 109 N. J. Eq. 181;* affirmed, on opinion below, *111 N. J. Eq. 355.* Not only was there a failure to produce this requisite proof but there is evidence to the contrary which directly supports the legal presumption of destruction of the 1937 will *animo revocandi.*

These considerations lead to affirmance of the decree of the prerogative court.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD. DEAR, WELLS, WOLFSKEIL, RAFFERTY. JJ. 13.

*For reversal*—None.