In re will of MARY ELIZABETH DAVIS, deceased.

[Submitted October term, 1939. Decided January 25th, 1940.]

*Mr. Donald M. Waesche, Mr. Robert O. Bentley, Jr.,* and *Mr. William Henig,* for Helen F. Heise.

*Mr. Nathan N. Schildkraut,* for William Z. Earle and Anna P. Earle.

*Mr. Stanton T. Lawrence,* for Rutherford Trust Company.

The opinion of the court was delivered by

CASE, J.

Mrs. Mary Elizabeth Davis died, following a short illness, on October 13th, 1936, at the age of seventy-nine years. Twelve days later a niece, Mrs. Helen F. Heise, wife of William C. Heise, applied, by petition, to the surrogate of Bergen county for the probate of an alleged lost will said to have been executed in the month of April, 1935, wherein Mrs. Heise was named as the executrix and sole beneficiary. The interested parties were cited to appear before the Bergen county orphans court which found from the proofs that the decedent had executed such a will as was alleged in the petition for probate but that she had subsequently destroyed the same with intent to revoke. The decree accordingly denied probate but determined that the proponent had reasonable cause for seeking probate and allowed counsel fees from estate funds to the proctor for the proponent, to the proctor for the Rutherford Trust Company named as executor in the earlier will and to the proctor for Anna P. Earle and William Z. Earle, beneficiaries under the last named will. There were cross-appeals: by Mrs. Heise from the entire decree and by Mrs. Earle from the allowance of counsel fees to the proctors for the proponent and for the Rutherford Trust Company. The prerogative court affirmed the denial of probate, reduced the allowance to proctor for the proponent, affirmed the allowance to proctor for Rutherford Trust Company and reversed the allowance to proctor for Mrs. Earle and her husband. The case comes to us on an appeal by Mrs. Heise and a cross-appeal by the Earles; the former from the entire prerogative court decree and the latter from the disposition of allowances.

The execution and contents of the will were satisfactorily proved. The question is whether, as was affirmatively found

by both the orphans court and the prerogative court, the testatrix, before her death, destroyed the will with intent to revoke. The pertinent law was recently stated by this court in *In re Bryan's Will, 125 N. J. Eq. 471; 5 Atl. Rep. (2d) 774,* as follows:

"The law of this state applicable to the establishment of lost wills is well defined. If such a will was last seen in the custody of the testatrix or she had access to it the fact that it cannot be found after her death raises the presumption that she destroyed it *animo revocandi.* This presumption may be rebutted but in order so to do the evidence must be clear, satisfactory and convincing and the burden is on the proponents. The proof necessary to rebut the presumption of revocation must be sufficient to exclude every possibility of a destruction of the will by the testatrix herself."

Mrs. Davis was old, partially crippled and of irascible temper. She resided with Mr. and Mrs. Heise as she had, except for intervals aggregating two years, for a period of fourteen years preceding her death. She paid a weekly board of $8.50. The value of her estate is not accurately appraised but appears to be somewhere between $20,000 and $40,000. The making of a will was by no means a finality with her. On November 21st, 1932, she made a will giving her entire estate to her nephew and niece, Mr. and Mrs. Earle, naming the Rutherford Trust Company as executor. She left that document in the custody of the Rutherford Trust Company, and it remained there until the time of her death. On January 8th, 1934, she executed a new will leaving her whole estate to her niece, Helen F. Heise, naming the Hackensack Trust Company as executor. That will she left with the Hackensack Trust Company. In April, 1935, she executed yet another will retaining Mrs. Heise as the beneficiary and naming her also as executrix. That instrument, enclosed originally within a sealed envelope, she placed with other papers in a tin box, of the type of a strong box, which she kept under the dresser in her bedroom and to which she had convenient and constant access. The proofs do not disclose that the document has since been seen. Search after Mrs. Davis' death failed to discover it. That is the paper which Mrs. Heise now seeks to

establish upon the theory that although it is lost it is nevertheless valid and effective as the decedent's last will.

The orphans court found that the decedent had destroyed the will with intent to revok. So, too, the prerogative court. Our study leads us to the same result. There is evidence that Mrs. Davis in conversing with one or another shortly before her death used words that were susceptible of the meaning that the instrument was not only in existence as her last will and testament but that it was in her tin box. On the contrary we have evidence of statements made by her during approximately the same period indicating that she would not leave her estate to the Heises, that she was unhappy and not well treated at their home and that she had asked Mrs. Earle to find a place for her elsewhere. Much of the evidence given affirmatively for the will indicates a planned situation by those interested in obtaining a favorable statement and a lack of spontaneity on the part of Mrs. Davis in making the statements attributed to her.

One such instance will suffice for illustration. The illness from which Mrs. Davis died was of short duration. She contracted a case of mumps and was placed in the "contagion" building of a hospital where, after a few days, she died. She was clearly very ill. The seriousness of her illness was known to others but not, apparently, to her. Mr. and Mrs. Heise were informed that her condition was critical. They called at the hospital and were being conducted by the supervising nurse to the ward where the patient was located. At that point the testimony of the supervising nurse, a witness for the proponent, takes up the thread:

"As we were walking in the building and through the ward the conversation came up about people being ill, and came up—I can't just say what, don't know, our conversation led to a will, and I said, 'Is everything of Mrs. Davis' in good order?' and I said, 'I don't know what is the matter with some people, they are so afraid to make a will. My belief is it doesn't hasten your death, or it will not prolong anyone not to make a will, and that should be done before.' And Mrs. Heise said she didn't know, and I said, 'Well, why don't you ask her?' She said, 'Well, I don't like to ask those things.

I feel funny about asking about a will.' I said, 'Well, I will ask Mrs. Davis if she has a will.' So while we were standing there at the bed, I said to her, 'What do you call your aunt?' She said, 'I call her Aunt Lizzie, and she calls me Helen.' As we were standing at the bed, I said, 'Mrs. Davis, here is Helen,' or I believe I said, 'Aunt Lizzie, Helen is here. And have you a will?' She said, 'Yes, in the box, and there will be no scrap or trouble.' "

A somewhat different version is given by Mrs. Heise who testified: "* * * I told her if the will was not there there woud be a scrap * * *. She said no, no scrap, in the box." Mr. Heise's testimony at that point is:

"She [Mrs. Heise] said where is the will? She [Mrs. Davis] again said in the box. Then Mrs. Heise said if there is no will there will be a scrap, and Mrs. Davis said, 'No, no scraps.' She couldn't talk very well because her face was severely swollen and she was very uncomfortable apparently and she kept saying, 'I want to go home, take me home.' "

Mrs. Davis died within five or six hours after that incident. Whatever may be said of the motivating purpose and the propriety on the part of the nurse in volunteering to bring to an issue the question of whether or not a newly arrived and fatally afflicted patient had made a will and in assuming to adopt the intimacy of family address in making the blunt inquiry, it is clear that Mrs. Davis, weak and in distress, was put to the necessity of saying something in the presence of interested relatives who are chargeable with inspiring, or at least with acquiescing in, the inquiry and that the reply was not intended by Mrs. Davis to be a solemn averment. It is within the realm of probability that she pursued the course which seemed to her most likely to end an unwelcome conversation; and, further, it is possible that the response had reference to the 1932 will which was at the moment in a special deposit box of the Rutherford Trust Company in the vault of that institution.

The gift of a $5,000 mortgage by Mrs. Davis to Mrs. Heise two months earlier may well have been considered by Mrs. Davis as a generous recognition of such attentions as the Heises had given her through the years beyond the service to

which she was entitled in consideration of her weekly payments for board. This is entirely consistent with the hypothesis of a revocation of the will made at approximately that time.

The will was last seen in the custody of the testatrix. Its place of repose was a receptacle to which she had full and continuous access. The presumption is that Mrs. Davis destroyed the paper *animo revocandi*. The evidence is not of the clear, satisfactory and convincing character essential to rebut that presumption. The burden, resting upon the proponent, has not been successfully carried. The legal principle stated earlier in this opinion is applicable, except that we do not find it necessary to rely upon so much of it as relates to the exclusion of every possibility of destruction by the testatrix.

It appears from the decree in the orphans court that the surrogate admitted the 1932 will to probate and on a date, we gather from the briefs, one day before the petition in the instant case was filed. The legality of that probate is discussed at length in some of the briefs, but no appeal as to it is before us and we therefore decline to consider it.

The allowances as fixed by the decree in the prerogative court were, in our opinion, proper.

The decree appealed from will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 14.

*For reversal*—None.