Lena Jensen died at Newark on January 6th, 1947. She had executed a will November 30th, 1937, and another will on October 20th, 1944. George R. Sommer, a member of the bar, drew both wills. In the will of November 30th, 1937, Catherine Canning was named as executrix, while Mr. Sommer was named as executor in the will of October 20th, 1944. After the death of the testatrix the will of 1937 was offered for probate and Adolph Nelson, a brother of decedent, filed a caveat and a petition for the probate of the will of October *Page 223 
20th, 1944. The proper execution of the will of 1937 was at no time in question; the contest surrounded the will of 1944.
The will of 1944 after it was executed was left in the possession of the testatrix, Mr. Sommer retaining an unsigned copy thereof at his office. When the testatrix died diligent search was made for a will but the only will found was the will of 1937. When Mr. Sommer drew the will of 1944 he says that the testatrix told him that she had changed her mind and wanted to leave everything to her brother Adolph. He saw the testatrix again in 1946 when she was in the Lutheran Memorial Hospital and on that occasion he says that testatrix told him that she did not think she would live very long and wanted to be sure that the will she made left everything to her brother Adolph; that the testatrix had a safe deposit box in the Fidelity Union Trust Company in which she kept most of her things but that he subsequently found that she kept very little there and that most everything was kept by her in her home. The witness says Mrs. Canning, the executrix and beneficiary under the will of 1937, was not related to the testatrix, that she was general manager for Lena Jensen in the conduct of a number of rooming houses in Newark and that when he drew the will of 1937 in favor of Mrs. Canning she was thus favored to compensate her for her services to the testatrix; that the relationship between them was very close and that testatrix had implicit trust and confidence in Mrs. Canning.
After the death of testatrix Mr. Sommer visited Mrs. Canning who was then in Jersey City. He told her that there was a will in 1937 under which she was the executrix and that there was a bequest to her, but that another will had been made in 1944 and that that will had not been found; that Mr. Nelson had found in Mrs. Jensen's effects the 1937 will and Mr. Nelson would be perfectly willing to have the 1937 will probated and compensate her, if she would release the bequest to her. The witness says he opened the safe deposit box in the Fidelity Union Trust Company but there was no will there. He instructed Mr. Nelson and Mr. Lysac, the latter an employee of Mrs. Jensen in her lifetime, to *Page 224 
search through all her effects for the will but the only will found was the 1937 will.
Between Christmas and New Year's of 1946-1947 Mr. Sweeney testified "Well, she [testatrix] always had told me, at all times, that her brother, her oldest brother Adolph would take — would be entitled to everything."
Rudolph Lysac says that in December, 1946, testatrix told him "she wanted her brother Adolph Nelson to get everything that she had." He says Emanuel Romero who was also employed by decedent in her lifetime was with him at the hospital when Mrs. Jensen made this statement. Emanuel Romero says that on that occasion "she again mentioned the fact that whatever she had belonged to her brother because he had contributed so much to keeping the business going."
Adolph Nelson testified that the testatrix was to see him in Colorado in July, 1946. She came there, according to the witness, to make arrangements in regard to her property and talked of selling it and moving back to Colorado for her health. "And while we was there, while I was introducing to her a will that I made out for my brother all alone and him taking care of it; and then I was telling her `that don't mean that he is going to cut you out from getting your share,' I said, `but it means he leaves it in your own hands so when the time comes that I pass away he will give you whatever this is coming to you.' `Well, she said she was going to make me on the bill of sale or a bill of sale on the property, in case she dies she won't have to go to any further expense, see? And she did." He says testatrix gave him a note for $63,000, for money she owed him and a bill of sale. The witness saw her again in 1946 before she died in the hospital in Newark at which time she told him she was sending for Mr. Sommer. "She told me that she wants him [Sommer] to make out an affidavit to the fact that everything belongs to me." "Q. With reference to that affidavit ____ A. Yes. Q. ____ didn't your sister, Mrs. Jensen, tell you that she wanted Mr. Sommer to come to the hospital so that a will could be drawn leaving property to you? A. She told me an affidavit in regards that everything belongs to me." The witness says it was he who found the will of 1937. *Page 225 
It is the settled law of this State that where as here the will was left in the custody of the testatrix or she had access to it, the fact that it cannot be found after her death raises the presumption that she destroyed it animo revocandi. This presumption may be rebutted but in order so to do the evidence must be clear, satisfactory and convincing and the burden is on the proponent. The proof necessary to rebut the presumption of revocation must be sufficient to exclude every possibility of a destruction of the will by the testatrix herself. In re Diament,84 N.J. Eq. 135; 92 Atl. Rep. 952; In re Bryan, 125 N.J. Eq. 471;5 Atl. Rep. 2d 774; In re Davis, 127 N.J. Eq. 55;11 Atl. Rep. 2d 233; In re Casey, 127 N.J. Eq. 101; 11 Atl. Rep.
2d 38; In re Calef, 109 N.J. Eq. 181; 156 Atl. Rep. 475.
The evidence of conversations had by the witnesses with the deceased prior to her death are insufficient to overcome the presumption. Moreover, there is some evidence from which it might be inferred as a fact that testatrix did destroy the will of 1944 for it appears that she gave her brother, Adolph Nelson, in whose favor she had made the will of 1944 a promissory note for $63,868.42 with interest at 5% and a bill of sale on July 29th, 1946, for a two-door sedan in consideration of $10 and for all the furniture, fixtures and equipment located in the rooming houses which she conducted in her lifetime at 198 Broad Street, 308 High Street, 12 Walnut Street, 44-46 Burnett Street and 110 Orchard Street, all in the City of Newark. If she had not destroyed the will of 1944 what reason was there for giving the note and the bill of sale by which bill of sale she gave to her brother practically all of the worldly goods of which she died possessed.
The presumption of destruction by the testatrix animorevocandi of the will of October 20th, 1944, therefore prevails and the petition for probate of that will will be dismissed. The will of November 30th, 1937, will be admitted to probate. *Page 226