**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3816-14T2
              A-2861-15T2

IN THE MATTER OF THE ESTATE
OF FELIX BRAUN.

_____

IN THE MATTER OF THE PROBATE
OF THE LOST WILL OF SYLVIA
BRAUN.

_____

Argued telephonically October 4, 2017 —
Decided November 2, 2017

Before Judges Reisner, Gilson and Mayer.

On appeal from the Superior Court of New
Jersey, Chancery Division, Probate Part, Union
County, Docket Nos. O-9701 and P-3275.

Fredda Katcoff argued the cause for appellant
Richard Belott, Executor of the Estate of
Felix Braun, in A-3816-14 (Rabner Baumgart
Ben-Asher & Nirenberg, PC, attorneys; Ms.
Katcoff, on the briefs).

Steven B. Lieberman argued the cause for
appellant Estate of Courtney Braun Ganz in A-
2861-15.

Stacey Boretz argued the cause for respondents
Tamara Bernstein, the Estate of Sylvia Braun,
the Estate of Norma Bernstein, and Hadassah,
the Women's Zionist Organization of America,
Inc. (Lindabury, McCormick, Estabrook &

Cooper, PC, attorneys; Peter M. Burke, on the
brief).

PER CURIAM

These two appeals, which we have consolidated for purposes of this opinion, concern disputes over the respective estates of Felix Braun and his wife Sylvia Braun.[1]  In A-3816-14, Richard Belott, the executor of Felix's estate, appeals from a March 16, 2015 order, denying his application to enforce a purported 2014 settlement of Sylvia's elective share lawsuit against Felix's estate.[2]  In the second appeal, A-2861-15, the executor of the estate of the couple's daughter, Courtney Braun Ganz, appeals from a November 16, 2015 order, entered after a plenary hearing, admitting a copy of Sylvia's April 27, 2010 will to probate.

After reviewing each separate record, we agree with Judge Camille M. Kenny that the purported 2014 settlement was not enforceable because, on its face, the document indicated that the parties had not yet reached agreement on material provisions.  With respect to the 2010 will, we find no basis to disturb Judge Kenny's well-explained factual findings, based in large part on her

---

[1] For ease of reference and intending no disrespect, we will refer to the Braun family members by their first names.

[2] After the trial court declined to enforce the settlement, Sylvia's estate executrix withdrew the elective share complaint, thus making the March 16, 2015 order ripe for appeal.

A-3816-14T2

evaluation of witness credibility. Based on the facts as Judge Kenny found them to be, there was sufficient credible evidence to support her conclusions, by clear and convincing evidence, that Sylvia did not destroy the original 2010 will and that the copy should be admitted to probate. Accordingly, we affirm the orders on appeal in both cases.

I

We discuss each appeal separately, although they have some undisputed facts in common. We begin with A-3816-14, the dispute over Felix's estate. Some brief background is helpful to put the issues in context. In 2007, Felix executed a will that left the bulk of his estate in trust for the couple's daughter Courtney, with the remainder to go to Courtney's daughter Molly after Courtney's death. He left no specific bequests for Sylvia in his will. However, the trust referenced in his will made provision for Sylvia to the extent Felix's estate exceeded $3.5 million. Felix died in February 2008. In September 2008, Sylvia filed a lawsuit seeking an elective share of Felix's estate. Both Courtney and the estate counterclaimed against Sylvia for allegedly misappropriating Felix's assets. Thereafter, Courtney filed a guardianship suit seeking to have Sylvia declared mentally incapacitated.

The court eventually dismissed the guardianship suit, but the litigation left Sylvia feeling alienated from her daughter. There is no dispute that in 2010, Sylvia executed a new will that specifically disinherited Courtney. Instead, the will left Sylvia's entire estate in trust for the care of two disabled relatives — her sister Norma Bernstein and Norma's daughter Tamara. The will provided that after the deaths of Norma and Tamara, the bulk of the trust assets would go to various religious charities. From the trust remainder, Sylvia also left $2000 bequests to Felix's grandchildren by a prior marriage and $10,000 to Sylvia's granddaughter Molly.

Meanwhile, the litigation over Felix's estate continued. In 2011, the parties, all of whom were represented by counsel, went to mediation. The mediation resulted in a written settlement agreement signed by the parties' attorneys, including Courtney's counsel. The 2011 agreement required Felix's estate to put about $900,000 in a trust for Sylvia as income beneficiary, with the remainder to go to Courtney, or to Molly if Courtney predeceased Sylvia. Sylvia also agreed to change her will to leave one-third of her net estate in trust to Courtney, with the remainder in trust for Molly. Sylvia further agreed to give Courtney ownership of a condominium in which Courtney was then residing, and to give her title to a car and certain other items. However, Courtney

A-3816-14T2

refused to sign the agreement, and Sylvia filed a motion to enforce the settlement.

After a two-day bench trial, Judge Lisa F. Chrystal issued a written opinion on May 22, 2014, declining to enforce the 2011 settlement because she found that Courtney had not agreed to it.[3] Judge Chrystal also found that schedules A and B of the settlement were never finalized. Schedule A concerned the distribution of jewelry and other personal property between Courtney and Sylvia and contained hand-written notations, including "no" as to Courtney getting a gold and ruby bracelet.

In early 2014, at a time when Sylvia was ninety years old and in ill health, she engaged in settlement negotiations with Courtney. Belott, who was also Sylvia's adversary in the litigation, claimed that he nonetheless undertook to assist Sylvia and Courtney to settle their differences, without directly involving attorneys in the negotiations.[4] The purported result of that process was a document which Belott contended was typed by

---

[3] Sylvia died on March 18, 2014, before the judge issued her decision. However, the remaining parties asked Judge Chrystal to decide the case, including making findings of fact.

[4] There was some evidence that Sylvia consulted by phone with her estate attorney, Ellen Krevsky, about a possible settlement. However, as Krevsky certified in this proceeding and testified in the later will contest, Sylvia never told her that she signed a settlement agreement. Krevsky last spoke to Sylvia on March 18, 2014, the day Sylvia died.

Courtney, with changes handwritten by Sylvia. In a verified complaint to enforce the 2014 settlement, Belott asserted that Sylvia signed the document in his presence on February 11, 2014. However, her signature was not dated, nor was it witnessed by a notary, and there was no line below her signature for a notary's signature. By contrast, Belott's signature, dated February 11, 2014, and Courtney's signature, dated February 25, 2014, each appear above a separate line on which is affixed the signature of a notary.

In an oral opinion issued on March 13, 2015, Judge Kenny found that the 2014 document on its face indicated that the parties had failed to reach agreement on material terms. In the document, the estate agreed to place $909,000 in trust for Sylvia. The document then recited that on Sylvia's death, the trust remainder would be turned over to an existing trust created by Felix's will, or to a special needs trust for Courtney, "and/or" to a spendthrift trust for Molly's benefit. The next sentence provided: "Terms to be drafted by Attorneys." However, there was no provision indicating agreement on how the attorneys would determine which option to choose or what terms to include.

The next paragraph recited that Sylvia would put "between $860,000-960,000" in a trust to generate income for her living expenses. However, immediately above that sentence appears a

handwritten notation "I cannot put 860,000-960,000" followed by the initials SB. The next two sentences recite, "Said Trust will pass to Courtney into a Special Needs Trust upon Sylvia's death <u>or to be agreed upon by the parties</u>." (Emphasis added).[5] The emphasized language indicated that the parties had not firmly agreed as to the disposition of the trust. There was also no indication as to how Sylvia would make such a later agreement, since it addressed a condition that would only occur upon her death.

The next sentence continued the ambiguity: "In the alternate [sic], a third Trust could be established to protect the money for Molly as listed on Page 3 of this agreement." However, the relevant paragraph on the third page provided "in the alternate to the second Trust, or a portion of said Trust, Sylvia agrees to allow for an immediate formation of a trust for <u>Molly to protect her from creditors</u>." (Emphasis added). However, the last phrase "Molly to protect her from creditors" was crossed out and replaced with the handwritten words "Sylvia's protection." The initials SB follow the handwriting. Thus, in one paragraph, Sylvia appeared

---

[5] The approximately $900,000 to Courtney represented an enormous increase over the amount she would have received under the 2011 settlement.

A-3816-14T2

to agree to create a trust for Molly, while in the next relevant paragraph, she did not agree.

The last paragraph of the purported agreement addressed the distribution of other estate assets. In that paragraph, Sylvia agreed to allow her house to be searched for paperwork that might lead to discovery of additional assets of Felix. The paragraph continues: "She also agrees to return any items to the Estate or what Courtney may wish, including those items listed on the 2011 agreement." (Emphasis added). However, after this typed provision, the following words and initials appear in handwriting: "If any assets are found Sylvia should share in them. SB"[.] There was no provision defining what "any items" referred to or how the parties would divide any further assets.

Additionally, the 2014 document acknowledged Courtney's understanding that "a portion of Sylvia's Estate is intended to fund a Special Needs Trust for Norma and Tamara Bernstein," and that "a portion of Sylvia's Estate will be used to make donations to several organizations of her own choosing." After the paragraph concerning the trust for Norma and Tamara, Sylvia apparently handwrote a note that "My sister and niece are to be taken care of." However, although the trusts for Norma and Tamara were central provisions in Sylvia's 2010 will, a concern repeated in the handwritten note, the purported 2014 agreement did not address

8

how Sylvia's estate would be able to fund those trusts after providing Courtney with the enormous financial benefits required by the settlement. Nor was there any specific term defining the funding of the charitable bequests, which was the other central concern in Sylvia's will.

As Courtney drafted it, the 2014 settlement would have required Sylvia to place about $900,000 of her own money in a trust that would go to Courtney on Sylvia's death, although Sylvia's handwritten note indicated that she could not afford it. Sylvia was also required to leave a minimum of an additional $500,000 in a trust for Courtney. The terms of the latter trust were not agreed on in the 2014 document but were to be "drafted by attorneys." There was no specific agreement as to the remainder beneficiary.

Our review of legal issues, including the interpretation of settlements and other contracts, is de novo. Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 474 (App. Div. 2009). We also review de novo a trial court's decision that a matter can be decided without a plenary hearing because there are no material facts in dispute. See Davis v. Brickman Landscaping, 219 N.J. 395, 405 (2014); Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 474-75 (App. Div. 1997).

A-3816-14T2

Based on the record presented to us, we share Judge Kenny's concern that the 2014 document, and the circumstances of its alleged negotiation, bore indicia of undue influence and overreaching. However, like Judge Kenny, we conclude it is unnecessary to rest our decision on that basis. As clearly appears from our discussion of the 2014 document, it is facially and fatally deficient due to the parties' failure to agree on multiple material provisions. At best, the purported settlement appears to be a preliminary document containing concepts, to which the parties might or might not be able to agree in the future if they could flesh out the material terms. As occurred here, an agreement is unenforceable "[w]here the parties do not agree to one or more essential terms." Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992); see also Morton v. 4 Orchard Land Trust, 180 N.J. 118, 120 (2004).

Consequently, Judge Kenny correctly determined that there was no enforceable settlement. Because the document was facially unenforceable, the record was hopelessly one-sided in the non-moving party's favor, and there was no need to hold a plenary hearing before declining to enforce the purported agreement. See

Amatuzzo, supra, 305 N.J. Super. at 474-75.  We affirm the order on appeal.[6]

## II

Next, we address A-2861-15, the dispute over probating a copy of Sylvia's 2010 will.  Our review of Judge Kenny's decision is deferential, because it rests on her factual findings and results from a testimonial hearing in which she had the opportunity to gauge the credibility of the witnesses.  See Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 483-84 (1974).  After reviewing the trial record, we affirm substantially for the reasons stated in her oral opinion issued on November 2, 2015, and in her January 26, 2016 written opinion addressing Courtney's reconsideration motion.[7]  We add these comments.

There was no dispute that Sylvia's attorney, Ellen Krevsky, had prepared the April 27, 2010 will and that Sylvia had signed the will and taken the original with her.  The issue was whether Sylvia had destroyed the original will.  The proponents of the

_____

[6] Belott's argument that the 2014 document constituted a will is without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).  His alternate contention, that the document constituted a contract to make a will, fails for the same reasons as his argument that it constituted a settlement of the litigation.

[7] As Judge Kenny noted in her January 26, 2016 opinion, Courtney passed away on or about January 18, 2016, while the reconsideration motion was pending.

will produced evidence from which Judge Kenny found, by clear and convincing evidence, that Sylvia did not intend to die intestate, did not sign a will after 2010, did not intend to revoke the 2010 will, and did not destroy it.

We briefly summarize the most pertinent trial evidence. After Sylvia's death in March 2014, her estranged daughter Courtney had access to Sylvia's house for at least two months, until the court appointed a neutral party, Elizabeth Locker, as temporary estate administrator. According to Locker's testimony, Courtney had the keys to Sylvia's house. Courtney told Locker that she had been in the house multiple times and had searched for Sylvia's will, including allegedly breaking into her late father's filing cabinet. Courtney told Locker she did not find the will. Courtney met Locker at the house to turn over the keys, but thereafter was uncooperative with Locker's efforts to locate bank accounts and other estate assets. She even directed her attorneys not to give Locker a copy of Sylvia's death certificate.

Sylvia appeared to have been a hoarder, and her home was cluttered with bags and boxes of papers. After a long search of Sylvia's house, during which she noted evidence suggesting that someone else had disturbed and moved various documents, Locker found a plastic bag containing a copy of a will dated April 27, 2010. In that same bag, she found the original of a letter from

A-3816-14T2

Krevsky, dated 2014. However, Locker could not find the original of the 2010 will.

Krevsky testified that between April 25, 2013 and March 18, 2014, Sylvia had several conversations with Krevsky about possibly changing her will. However, Sylvia always told Krevsky, "I want to make changes to my will, but I can't do it now." Sylvia never told Krevsky that she destroyed the April 2010 will, and Krevsky never prepared a new will for her. Krevsky further testified that in all of their conversations, Sylvia never wavered in her expressed desire to leave a testamentary special needs trust for her sister and niece. She also never changed her expressed desire to leave the remainder of the trust to the Hadassah Hospital.

Krevsky spoke to Sylvia for the last time on March 18, 2014. Krevsky was unable to remember the precise conversation but believed that "it was typical of the conversations that we'[d] been having over the last several months, that she wanted to finalize the settlement for the estate and she wanted to make changes to her will, but she was going to contact me." Sylvia died later that day.

Krevsky also recalled that, even in April 2013, when Sylvia was about to have surgery and was concerned about the outcome, she had Krevsky prepare a living will but told Krevsky that she had not yet decided what she wanted to do about a new will. According

to Krevsky, in all of their conversations, Sylvia never told her that she had made a final decision about changes to her estate plan, never asked Krevsky to prepare a new will for her, and never told her that she had destroyed her 2010 will. Krevsky also confirmed that it was not unusual for Sylvia to lose documents and ask Krevsky to send her copies.

In her oral opinion, Judge Kenny found Krevsky to be a credible witness. The judge found that, as late as the day of her death, Sylvia communicated to Krevsky that she had not settled the litigation over Felix's estate and had not decided on changes to her will. The judge likewise found Locker to be a credible witness in all respects. She also credited the testimony of Sylvia's friend, Mary Fagan, who testified to Sylvia's strong expressions of concern over helping her sister and niece. Fagan also testified to Courtney's apparent lack of concern for her mother's welfare. The judge found significant Fagan's testimony that Sylvia constantly carried around a plastic bag of papers that seemed to be important to her. The judge noted that during her search, Locker found such a plastic bag that contained original papers from Krevsky and a copy of the 2010 will.

The judge found that Belott was biased in Courtney's favor and that his trial testimony about his alleged lack of knowledge about the 2010 will, and concerning the alleged 2014 settlement

14

agreement, was incredible. The judge also noted that Courtney could have testified, either in court or by de bene esse deposition, but did not do so. She assumed that, had Courtney testified, she would have denied destroying the 2010 will.

Without directly finding that Courtney found and destroyed the will, Judge Kenny noted evidence that someone other than Locker searched through Sylvia's house and could have found Sylvia's original will. More importantly, however, Judge Kenny found by clear and convincing evidence that Sylvia had no intent to revoke the 2010 will. She further found that Sylvia's critical concern was to make adequate financial provisions for her sister and niece, and the charities that had assisted her, and that Sylvia understood the need to have a valid will. She found that Sylvia "would never have wanted to die intestate and worry about what would happen to Norma and Tammy" and the charities after her death.

The judge concluded that Sylvia would not have destroyed the 2010 will without first making another will, and that up to the date of her death Sylvia never decided on the provisions of a replacement will. Accordingly, the judge concluded that the will's proponents had met their burden of proof by clear and convincing evidence, and the copy of the 2010 will would be admitted to probate.

Based on our review of the record, we find no basis to disturb Judge Kenny's well-articulated evaluations of witness credibility, or her factual findings. See Cesare v. Cesare, 154 N.J. 394, 411-12 (1997); Rova Farms, supra, 65 N.J. at 483-84. We cannot agree with appellant's argument that the judge applied the wrong burden of proof. To the contrary, Judge Kenny appropriately held the will's proponents to the clear and convincing evidence standard, most recently articulated by this court in In re Estate of Ehrlich, 427 N.J. Super. 64, 75-76 (App. Div. 2012). Based on the judge's factual findings, which are supported by substantial credible evidence, the proponents clearly and convincingly satisfied their proof burden.

Appellant contends that Judge Kenny should have applied the following proof standard: "the proof necessary to rebut the presumption of revocation must be sufficient to exclude every possibility of a destruction of the will by the testator himself." In re Davis's Will, 127 N.J. Eq. 55, 57 (E. & A. 1940). Our courts have not cited that standard in a published opinion since the 1940s. See In re Estate of Jensen, 141 N.J. Eq. 222 (Prerog. Ct. 1947), aff'd o.b., 142 N.J. Eq. 242 (E. & A. 1948). In fact, when articulated in Davis, supra, the court relied on the lack of clear and convincing evidence and "[did] not find it necessary to rely upon [the legal principle] as relates to the exclusion of every

possibility of destruction by the testatrix." <u>Id.</u> at 60. Moreover, the standard seems inconsistent with recent legislation aimed at implementing a decedent's testamentary intent and making it easier to probate an informal will and avoid intestacy. <u>See</u> <u>N.J.S.A.</u> 3B:3-3.

However, even if we apply the standard, Judge Kenny found clear and convincing evidence that Sylvia understood that she needed a will, would never have wanted to die intestate, would never have left her sister and niece unprovided for, and had no intent to revoke her 2010 will. Added to that is clear and convincing evidence that Courtney had access to the house for months, admitted searching for the will, and had a strong financial motive to destroy the original will if she found it. In the context of this case, there was clear and convincing evidence sufficient to "exclude every possibility" that Sylvia destroyed her 2010 will.

Based on factual assertions the trial judge did not credit, appellant further contends that Judge Kenny should have "reconcile[ed]" the 2010 will with the purported 2014 settlement and other "subsequent writings." The argument is contrary to the facts found by Judge Kenny – including her finding that Sylvia never decided on the terms of a new will – and is without sufficient

merit to warrant further discussion.  R. 2:11-3(e)(1)(E).  We affirm the November 16, 2015 order on appeal.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION