IN THE MATTER OF THE PROBATE OF THE LAST WILL
AND TESTAMENT OF BABETTE DAVIS, DECEASED.

Argued November 23, 1953—Decided December 21, 1953.

*Mr. Francis W. Hayden* argued the cause for the appellant (*Messrs. Crummy & Consodine,* attorneys).

*Mr. William J. McCormack* argued the cause for the respondents (*Messrs. Milton, McNulty & Augelli,* attorneys; *Mr. Charles J. Milton,* of counsel).

The opinion of the court was delivered by

OLIPHANT, J.  This is an appeal from an order of the Warren County Court which dismissed an order requiring the respondents to show cause why a judgment of the Surrogate's Court of that county, which had admitted to probate the last will and testament of Babette Davis, should not be set aside.

The proceeding was instituted pursuant to *Rules* 5:3–4(*a*), 5:3–5(*a*), now *R. R.* 5:3–4(*a*), 5:3–5(*a*).  The moving parties were the next of kin of the decedent and the application was predicated on these allegations: (1) that the testatrix was mentally incompetent and incapable of disposing of her estate by will; (2) that the will was the product of undue influence, and (3) that it was not properly executed according to the laws of this State.  The only points argued here are undue influence and certain rulings on the admission of evidence.

In a rather protracted trial it developed that the will had been executed on October 23, 1951, at the office of Ovid

C. Bianchi, a counsellor-at-law of this State, after it had been drawn by Sol S. Solky, an attorney-at-law of this State from a form of a prior will of the testatrix supplied by Mr. Bianchi. Although Mr. Solky was never associated with Mr. Bianchi in the practice of law, he had the use of the office and had at times done legal research for him. He was also a civil service employee in the department of the city government of Orange, of which Mr. Bianchi was the director.

Mr. Bianchi had drawn at least two prior wills for the testatrix, in one of which the testatrix divided and devised her estate in one-half shares to the two children of one Mary Shotwell, a cousin, and to the two children of Bianchi, each child receiving a quarter share. In the will in question the entire estate was willed to the two Bianchi children and Bianchi was named as executor.

There is a legal presumption that the testatrix was of sound mind and competent when she executed the will and the burden of proving undue influence is ordinarily upon the person asserting it and it must be clearly established. *Gellert v. Livingston*, 5 *N. J.* 65, 71 (1950). The mere existence of the attorney and client relationship without more does not establish undue influence. While the burden of proving undue influence lies with the contestant, if a will benefits one who is in a confidential relationship to the testatrix and there are additional circumstances of a questionable or suspicious character, a presumption of undue influence arises and the burden of proof is shifted to the proponent of the will. The relationship of attorney and client obviously is such a confidential relationship. *In re Hopper's Estate*, 9 *N. J.* 280 (1952). The mere relationship when it is genuine and sincere raises no implication of fraud or undue influence. To be undue the influence must be such as to destroy the free agency of the person over whom it is exerted. *In re Neuman's Estate*, 133 *N. J. Eq.* 532 (*E. & A.* 1943); *In re Nixon's Will*, 136 *N. J. Eq.* 242 (1945); *In re Hopper's Estate, supra.*

■ There were a number of singular and peculiar circumstances appearing in this case of sufficient moment and substance to shift the burden of proof to the proponents of the will. While each case depends on its own particular facts, the rule is that where doubt is created the proof of the proponents must be clear and convincing as to the competency and free agency of the testatrix in order to resolve such doubt in their favor.

■ After a careful consideration of all the facts, conflicting as they are in some particulars, we agree with the trial court that they clearly indicate that such influence, as existed, was insufficient to impair the free agency of the testatrix when she made the will in question. She was a woman of considerable and diverse business experience acquired over the years. Up to the time of the making of her will in question she had managed her business affairs with considerable competence. While she often consulted Mr. Bianchi as to the legal details of her business transactions and had him draw the necessary formal legal papers, the actual decisions as to the investment of her funds or the sale of property in which she had an interest were in practically all instances made by herself. There is no chain of facts or circumstances from which it could be inferred that Mr. Bianchi could have influenced her in any substantial way in these business decisions of hers. This is gleaned not only from the testimony of Mr. Bianchi and his wife but from other witnesses in the case. The proof to the contrary is largely based on suspicion and is more or less conjecture which, in turn, is predicated on the friendly neighborly way of life the testatrix followed. The mere friendly gestures of a good neighbor to a neighbor, friend, or even a distant relative are not always indicative of the ultimate intention of such a person with respect to disposition of her estate by will. More than this is required to establish undue influence, and we cannot say that the influence of Mr. Bianchi was such that it so interfered with the free agency of the testatrix that without it she would have made a different disposition of her property.

It is surprising that a member of the bar of Mr. Bianchi's long experience could not foresee that such suspicions and conjectures would arise from the circumstances under which the will was drawn. True, the testatrix initiated the appointment and stated her intention to change her will. On her arrival at his office Mr. Bianchi, after talking to her, learned her intent to leave her entire estate to his children. He then called in Mr. Solky, whom he knew had a rather close association with him, to draw the will and he left the office. The whole transaction was completed by Mr. Solky with the testatrix in about a half hour from the time Mr. Bianchi left the office, and the will was left in his safe.

We wish to reiterate what has been said repeatedly by our courts as to the proprieties of a situation where the testatrix wishes to make her attorney or a member of his immediate family a beneficiary under a will. Ordinary prudence requires that such a will be drawn by some other lawyer of the testatrix' own choosing, so that any suspicion of undue influence is thereby avoided. Such steps are in conformance with the spirit of *Canons* 6, 11, of the *Canons of Professional Ethics* promulgated by this court.

The appellant argues that since the will remained in the safe in Mr. Bianchi's office from the date of its execution to the date of death that this should sustain the presumption against the proponent. The law and facts are otherwise. The testatrix made several visits to Mr. Bianchi's office and saw him on other occasions between October 23, 1951 and the date of her death, September 19, 1952. We feel that she would not have hesitated a minute to demand the will if she had any occasion to do so, nor would she have brooked a refusal. It is a well settled presumption that the testatrix was fully acquainted with its contents and naturally it would have been the simplest thing in the world for the testatrix to have destroyed the will if she was not satisfied with it. *In re Bartles' Will,* 127 *N. J. Eq.* 472 (*E. & A.* 1940); *Gellert v. Livingston, supra,* 5 *N. J.,* at *page* 76.

■ As to the rejection of other evidence relating to this same period, we see no harmful error in such action by the trial court. The point of time at which testamentary capacity is to be tested is that of the execution of the will. *Gellert v. Livingston, supra.*

■ Counsel for the respondent filed a cross-appeal from the allowance of the trial court of a fee of $1,000 to counsel for the appellant. It is enough to say there were sufficient facts to constitute reasonable cause for contesting the validity of the will, and under *R. R.* 4:55–7(*e*) an allowance may be made to both proponent and contestant to be paid out of the estate. *Katz v. Farber*, 4 *N. J.* 333 (1950). The allowance was not excessive.

The judgment is affirmed. No costs.

*For affirmance*—Justices HEHER, OLIPHANT, BURLING and JACOBS—4.

*For reversal*—Chief Justice VANDERBILT, and Justice BRENNAN—2.