80 N.J. Super. 481 (1963)
194 A.2d 40
IN THE MATTER OF THE PROBATE OF THE ALLEGED WILL OF GEORGE ROMAN, DECEASED.
Superior Court of New Jersey, Hudson County Court.
Argued August 22, 1963.
Decided September 26, 1963.
*482 Messrs. Hollander & Leichter (Mr. Walter Leichter, appearing), attorneys for plaintiff Irene Baker.
SCHULMAN, J.C.C.
The plaintiff, sister of decedent, moves before the County Court, Probate Division, for a judgment admitting to probate the alleged lost will of the decedent. The complaint alleged that the only surviving next of kin are the plaintiff and the mother of the decedent and there are no other brothers or sisters or children of predeceased brothers or sisters.
The proofs disclosed through the testimony of Walter Leichter, Esq., a member of the bar of this State, that he had represented the decedent on several occasions during his lifetime. That on November 21, 1949 the decedent executed a last will and testament in the office of said Walter Leichter to which will Mr. Leichter and a Mrs. Maloy a stenographer were the subscribing witnesses. Mr. Leichter further testified that the original will was given to the testator who informed him that he would keep it in his safe at home and Mr. Leichter kept the other two copies. Under said will the decedent devised and bequeathed to his sister his entire estate. Mr. Leichter further testified that from the execution of the will down to the decedent's death on June 9, 1963, the decedent did not communicate with him with reference to said will. He further testified to the proper execution of the will and that the copy of same offered in evidence was the exact duplicate of the original. The execution of the original will in 1949 and the duplicate wills as being an exact copy of same were further testified to by Mrs. Maloy.
The next witness presented by the plaintiff was Captain Denker of the Weehawken Police who testified that in August 1962 the decedent's home was entered and a black Marvin safe approximately 3 feet wide, 3 feet high and 2 feet in depth was removed by persons unknown from the defendant's premises. The theft was reported on the date the safe was taken and on the next day through police channels the safe was recovered in New York City. The captain further testified *483 that on the day of the theft, the decedent gave him a list of items contained in the safe and that among these items besides cash and papers was the decedent's will. The captain further testified that when the safe was found in New York, all that was found was a certain receipt for a burial which item was part of the list given by the decedent to the captain. The captain testified that the investigation was kept alive for some four to five months after the theft and during this period he advised the decedent that the chances of recovering the contents of the safe were good.
The plaintiff testified that a few months prior to the date of theft, the decedent asked her to visit with him and on said visit informed her that she was the sole beneficiary of his estate. The plaintiff further testified that the decedent went to his safe on that occasion and took out a paper and read to the plaintiff the contents of the will. She testified, however, that all that she remembered of same was the fact that the decedent's estate was to be given to her unless she predeceased him, and that in such event, it would go to her son.
The case was uncontested by the mother, the court being informed that she was some 83 years of age and lived in Union City. That the decedent and his mother never saw each other and that there was no appearance by anyone on behalf of the mother.
The cases dealing with lost wills in this State uniformly hold that the burden of proof is upon the proponent to prove the lost, stolen or destroyed will by clear and convincing evidence. This clear and convincing evidence must be shown with reference to the execution of the alleged lost will, the contents of said will, and the circumstances under which the will was lost, stolen or destroyed.
From the above facts testified to, the court finds by clear and convincing evidence that the testator had made a will, that said will had never been revoked by the testator, that the contents of the will were the same as those of the proffered duplicate copy of said will, that said will was last *484 in the possession of the decedent and that it was in existence at the time of the theft of his safe.
The only question remaining to be decided by this court is what presumption, if any, exists in our State where a will is lost, destroyed or stolen, with the knowledge of the testator, but without his consent. Do these facts, standing alone, overcome the presumption in law of revocation by the testator where the will was last in his possession and knowingly stolen from him? Does the testator in the period of some seven months before his death adopt said fact situation and hence revoke his will by his failure to execute another will?
In the case of Campbell v. Cavanaugh, 96 N.J. Eq. 724, (Ch. 1924), affirmed o.b. under name of Campbell v. Smullen, 96 N.J. Eq. 724 (E. & A. 1924), the court held under the facts of that case that the failure of the testatrix to draw a new will after knowledge that her will was lost or could not readily be found did not overcome the presumption that where a will is burned, torn, cancelled or obliterated by a testator and last known to be in the possession of the testator, the presumption is of revocation by the testator. This case has been severely criticised by Clapp, Wills and Administration, 5 New Jersey Practice, pp. 179-181, with the following comment (citing Campbell v. Smullen, supra):
"* * * Where a will has been left in a place to which possibly the testator has had access during his lifetime and it can not be found after his death, there arises a presumption that he burned or tore it animo revocandi.

* * * * * * * *
The policy governing * * * is so strong that the revocation of a will was once held to have been conclusively established where a will to which the testator had access was lost and he after learning of the loss had an opportunity to draw a new will; but this is difficult to support. * * *"
Although the wife was the testatrix in this case, Clapp further states as follows:
"* * * According to this decision, mere illness of the testator does not demonstrate a lack of opportunity to draw a new will; to *485 rebut the presumption of revocation, he must be so ill as to be unable to make a will. Moreover it was held in that case that where by the will he had left his estate all to his spouse, it is immaterial that his intentions to leave her his estate, are proven to have continued after the will was lost; that the presumption remains. The whole decision is, as stated, difficult to support. It overlooks two points: first, proof that a will is mislaid certainly does not indicate that it was burned, torn, cancelled or obliterated by the testator or by someone else in his presence; second, a loss being by definition unintentional, the intent to revoke could not have been coincident with any act of destruction. The decision must be limited by the language of the case on which it perhaps wholly relies, * * * namely to a situation where there is some doubt as to whether the will was lost or whether it was burned or torn animo revocandi."
The facts in the instant case are readily distinguishable from the facts in the Smullen case. Here we have a conclusively proven stolen will, an acknowledgment by the testator that said will was one of the items contained in the safe. In addition we have testimony that the testator had good reason to hope for the return of the contents of said safe for a period of 4 or 5 months after the theft and approximately 7 months before his death. In the instant case it is obvious that the presumption of either revocation by the testator himself or, as may be gleaned from the Smullen case, an adoption of the lost will as a revocation does not exist. If the principle that a testator may adopt a course of conduct consistent with revocation obtains in this State, the facts in this case do not warrant the application of said principle. See 99 A.L.R. 524, 3 A.L.R.2d 949, for collected authorities on this subject.
The carbon copy of the will offered for probate will be admitted to probate upon the presentation of a proper order.