741 A.2d 655 (1999)
326 N.J. Super. 474
Leonard PIVNICK, Plaintiff-Appellant,
v.
David BECK, Esq., and Sills Cummis Zuckerman Radin Tischman Epstein & Gross, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted November 10, 1999.
Decided December 20, 1999.
*656 Hilton L. Stein, Towaco, for plaintiff-appellant (Mr. Stein, of counsel; Mr. Stein and Diane M. Acciavatti, Randolph, on the brief).
Sills Cummis Radin Tischman Epstein & Gross, Newark, for defendants-respondents (James M. Hirschhorn and Thomas J. Demski, of counsel; Mr. Hirschhorn, on the brief).
*657 Before Judges KING, CARCHMAN and LEFELT.
The opinion of the court was delivered by LEFELT, J.S.C., (temporarily assigned).
Plaintiff Leonard Pivnick sued defendant David Beck, and his law firm, Sills Cummis Zuckerman Radin Tischman Epstein & Gross, for legal malpractice. Plaintiff alleged that Beck negligently drafted his father's revocable trust agreement in a manner that was directly contrary to his father's intent. Because plaintiff failed in an earlier probate proceeding to prove by clear and convincing evidence that the trust agreement was contrary to Pivnick's father's intent, the motion judge concluded that collateral estoppel barred the current malpractice action and dismissed plaintiff's complaint. Plaintiff appealed, claiming that malpractice actions must only meet a preponderance burden of proof. Thus, plaintiff argues that the motion judge erred because collateral estoppel does not apply when the prior litigation involved a higher burden of proof. We affirm.

I.
Harry Pivnick ("Harry") was an independent businessman survived by two children, Leonard Pivnick ("Leonard" or "plaintiff"), his son, and Audrey Berman ("Audrey"), his daughter. Harry also had five grandchildren, three from Leonard and two from Audrey. When Harry died on July 8, 1992, he left a will, executed on August 2, 1989, and the Harry Pivnick Revocable Trust ("Trust Agreement"), executed on April 1, 1992. Both of these instruments were prepared by David Beck, Esq., of the Sills Cummis Zuckerman Radin Tischman Epstein & Gross firm ("Beck" or "defendants").
Among other bequests, Harry's will left $400,000 to Audrey and $10,000 to each of the five grandchildren. The Trust Agreement conveyed all the stock from Harry's business, the Acme Holding Co., Inc. ("Acme"), to the trust, with a life interest in Harry and the remainder on Harry's death to Leonard. The Acme stock, Harry's primary asset, was worth approximately $5.5 million at his death.
Leonard was both successor trustee of the trust and co-executor of Harry's estate. After Harry's death, Audrey requested that Leonard and Angela Roper, as co-executors of Harry's estate, pay her $400,000 bequest. Leonard did not pay Audrey's bequest, claiming the estate lacked the funds to do so without liquidating a portion of the trust, and as trustee, Leonard would not provide the estate with the necessary funds. Audrey then sued Harry's estate to compel payment of her bequest. This matter was determined on cross motions for summary judgment, and, at this point, defendants Beck and Sills Cummis were not yet part of the litigation.
Leonard's motion for summary judgment was supported by his certification asserting that the Trust Agreement, as prepared by Beck, did not reflect his father's intent and, therefore, the trust should be reformed. Leonard claimed that his father's intent in creating the trust was to insulate Acme stock from any claim by Audrey, insure the smooth transfer of the stock to Leonard and, further, that the stock was not intended to fund Audrey's bequest. Leonard attached to his certification a letter, dated June 22, 1993, from Beck that Leonard claimed confirmed his father's intent. This letter from Beck to Leonard provided, in pertinent part:
In further reference to your letter of June 2, 1993, and to our conversation of last week, it appears that you may be under a misconception as to the purpose and scope of the Revocable Trust Agreement of April 1, 1992.
The Trust Agreement accomplished the avoidance of probate only with respect to the assets transferred to it, i.e., 10 shares of Acme ... Their value as of the date of Harry's death is nevertheless includible in his gross estate for federal tax purposes ... The primary reason for the implementation of the *658 Trust Agreement was to accomplish a speedy transfer to you of the Acme stock upon Harry's death without the risk of interference by your sister. However, the Trust Agreement is abundantly clear as to the application of the assets transferred, contributions for death taxes, and disposition of trust assets[.]
....
From the ... applicable provisions of the Trust Agreement, it should be clear that the Trustees of the Trust are under an obligation to pay to the Executors of Harry's estate such amounts as the Executors certify as being required to pay Harry's debts and funeral expenses, expenses of administering his estate, pecuniary bequests contained in his will, and death taxes arising from the inclusion of the Acme stock in the estate.
On September 18, 1997, Judge Clarkson S. Fisher, Jr., sitting in probate, granted Audrey summary judgment, denying reformation of the Trust Agreement and directing payment of her $400,000 bequest. Judge Fisher determined that there was clear and convincing evidence that Harry intended to use the trust to transfer immediate ownership of the Acme stock to Leonard, while still charging the trust assets with the expenses of the estate and the specific bequests under Harry's will. In reaching his decision, the probate judge referenced Article II, paragraph 1 of the Trust Agreement which provides:
Upon the Grantor's death, the Trustees shall pay over to the Executors and Administrators of the Grantor's estate such amounts from time to time as the Executors or Administrators shall certify to the Trustees as being required to pay the debts and funeral expenses of the Grantor, the expenses of administering the Grantor's estate and any pecuniary bequests contained in the Grantor's will provided, however, that such payments shall be made exclusively out of funds or property or the proceeds thereof which are included in the Grantor's gross estate for federal estate tax purposes.
Thus, the Trust Agreement specifically made the trust chargeable for bequests in Harry's will if Harry's estate lacked funds to pay the pecuniary bequests left in the will. The probate judge further found that the trust was consistent with Harry's will because his will provided that "[Harry's] executors or trustees, in their sole and absolute discretion, shall have authority and power to implement whatever method they deem practicable and efficacious to discharge the within bequest...."
The probate judge also noted that the "only proof offered [regarding Harry's alleged intent contrary to that of the will and Trust Agreement], other than Leonard's unsupported denials, is the Beck letter" and "[t]hat letter does provide clear and convincing proof ... that Harry Pivnick intended exactly what the instruments state."
The probate judge entered final judgment for Audrey on November 13, 1997, and Leonard appealed. We affirmed the probate judge's decision on November 19, 1998. The Supreme Court denied certification on May 12, 1999, at 160 N.J. 476, 734 A.2d 791.
Leonard then filed the legal malpractice claim against Beck and his firm from which this appeal emanates. The crux of Leonard's complaint was that Beck's negligence in preparing the Trust Agreement yielded an outcome directly contrary to Harry's intent, which was allegedly to disinherit Audrey and leave his entire estate to Leonard.
According to Leonard's complaint, prior to 1989, Harry became concerned that Audrey might challenge his will because, at that time, Harry's will made no provision for Audrey. Harry then discussed this concern with Beck and Beck advised Harry to make a provision for Audrey in his will. Leonard's complaint further states that based upon Beck's advice, Harry executed a new will, prepared by Beck, providing *659 a $400,000 bequest to Audrey, "despite the fact that [Harry] was desirous of making no provision at all in his will for Audrey's benefit."
Leonard's complaint then states that in late 1991 or 1992, Harry learned that an inter vivos trust could be used to pass his assets directly to Leonard upon Harry's death, without these assets passing through the estate. According to Angela Roper's certification, which was submitted to the trial court, as an attorney and business associate of Harry, she advised Harry that an inter vivos trust could be used to "eliminate any post-death payment from [Harry's] estate to his daughter." For most of Ms. Roper's adult life, until Harry died in 1992, she was either an employee of or performed work for Harry. Pursuant to Harry's request, Ms. Roper communicated Harry's desire to create an inter vivos trust to Beck, and she told Beck, according to her certification, that "cutting Audrey Berman out of his estate was Harry Pivnick's sole purpose in establishing the inter vivos trust."
Defendants moved to dismiss plaintiff's complaint on three grounds. First, that plaintiff did not stand in privity with Beck and, therefore, he could not bring a malpractice action. Second, because Harry's intent was clear on the face of his will and the Trust Agreement, and these documents contained no intrinsic defect, plaintiff was barred from introducing extrinsic evidence of intent. Third, plaintiff was collaterally estopped from arguing that Harry's intent was different from that expressed in his Trust Agreement and the will because this issue had already been decided in the probate proceeding.
On November 20, 1998, Judge Schott dismissed plaintiff's complaint because the probate action had previously determined that the will and Trust Agreement expressed Harry's intent as to the disposition of his property and, therefore, plaintiff was collaterally estopped from relitigating the issue of his father's intent. In reaching her decision, Judge Schott determined that a clear and convincing burden of proof should apply to malpractice actions where a malpractice plaintiff claims that the testator's intent differed from the intent expressed on the face of the testamentary instruments.

II.
In legal malpractice actions, the client bears the burden of proving malpractice by a preponderance of the evidence. Sommers v. McKinney, 287 N.J.Super. 1, 10, 670 A.2d 99 (App.Div. 1996). Reformation of trust agreements in probate actions requires clear and convincing proof. Brodzinski v. Pulek, 70 N.J.Super. 63, 71, 174 A.2d 907 (Ch.Div. 1961), mod., 75 N.J.Super. 40, 182 A.2d 149 (App.Div.), certif. denied, 38 N.J. 304, 184 A.2d 419 (1962). Plaintiff contends, therefore, that Judge Schott erred in dismissing his complaint because collateral estoppel or issue preclusion does not apply where a prior proceeding involved a more onerous burden of proof.
Defendants counter, arguing that legal malpractice claims should only be recognized where an attorney's negligence frustrates the testator's intent as expressed in the testamentary document, or alternatively, that when a testamentary document is unambiguous, clear and convincing evidence must be provided in the malpractice action to establish that the attorney failed to express the testator's intent.
As to their first alternative, defendants argue forcefully that New Jersey should adopt the view permitting beneficiaries to bring malpractice claims only when the drafting lawyer's mistake thwarts the testator's intent as expressed in the document. Because the deceased's true intentions are unknown due to his death, defendants argue that the language of the testamentary instrument must control. No New Jersey decision has held that a disappointed heir has a malpractice claim against an attorney for allegedly disregarding the testator's drafting *660 instructions and leaving the heir less than the testator allegedly intended. According to defendants, the weight of authority from other jurisdictions does not permit such a claim.
A number of states preclude a beneficiary from asserting a malpractice claim against the drafter of the will based upon the lack of privity between the lawyer and the non-client beneficiary. See, e.g., Shriners Hosp. for Crippled Children, Inc. v. Southard, 892 P.2d 417 (Colo.Ct.App. 1994); Noble v. Bruce, 349 Md. 730, 709 A.2d 1264 (1998); St. Mary's Church of Schuyler v. Tomek, 212 Neb. 728, 325 N.W.2d 164 (1982); Deeb v. Johnson, 170 A.D.2d 865, 566 N.Y.S.2d 688 (App.Div. 1991); Oliver v. West, 908 S.W.2d 629 (Tex.App.1995, writ denied). In New Jersey, such a lack of privity argument in malpractice actions brought by beneficiaries would have little currency. Petrillo v. Bachenberg, 139 N.J. 472, 483-84, 655 A.2d 1354 (1995).
Several other states, however, allow malpractice claims by beneficiaries if, due to the attorney's professional negligence, the testamentary intent expressed in the will is frustrated in whole or in part. See, e.g., Ventura County Humane Society v. Holloway, 40 Cal.App.3d 897, 115 Cal. Rptr. 464 (Cal.Ct.App.1974); Espinosa v. Sparber, Shevin, Shapo, Rosen and Heilbronner, 612 So.2d 1378 (Fla.1993); Walker v. Lawson, 526 N.E.2d 968 (Ind.1988); Holsapple v. McGrath, 575 N.W.2d 518 (Iowa 1998).
Additionally, some jurisdictions allow disappointed beneficiaries to recover on either a negligence or a third-party beneficiary theory. See, e.g., Stowe v. Smith, 184 Conn. 194, 441 A.2d 81 (1981); Needham v. Hamilton, 459 A.2d 1060 (D.C. 1983); Simpson v. Calivas, 139 N.H. 1, 650 A.2d 318 (1994); Hale v. Groce, 304 Or. 281, 744 P.2d 1289 (1987); Stangland v. Brock, 109 Wash.2d 675, 747 P.2d 464 (1987).
We decline to follow defendants' invitation to preclude all legal malpractice suits by beneficiaries unless those suits involve a lawyer's negligence inhibiting the expressed intent of the testamentary document. In our opinion, such a drastic course may eliminate worthy suits and cause injustice. We conclude, as did Judge Schott, that the policies involved here can be satisfactorily protected by enhancing the applicable burden of proof in this type of legal malpractice action.
By requiring a more rigorous burden of proof in analogous proceedings, New Jersey has demonstrated its skepticism concerning attempts to contradict language in instruments signed after due consideration. In this manner, New Jersey has protected the sanctity of testamentary documents and other types of instruments that are adopted with care and presumed to be serious and often solemn undertakings. For example, reformation of written contracts requires clear and convincing proof because it imposes a result on the contracting parties that conflicts with the intent expressed in the language of their contract. St. Pius X House of Retreats v. Diocese of Camden, 88 N.J. 571, 580-81, 443 A.2d 1052 (1982); Brodzinsky v. Pulek, 75 N.J.Super. 40, 48, 182 A.2d 149 (App.Div.), certif. denied, 38 N.J. 304, 184 A.2d 419 (1962). Similarly, we require the proponent of a lost or missing will to establish the supposed intent of the document by clear and convincing evidence. In Re Will of Roman, 80 N.J.Super. 481, 483, 194 A.2d 40 (Hudson County Ct.1963). Likewise, one who would set aside a will, regular on its face, for lack of testamentary capacity or undue influence must prove these impeaching facts by clear and convincing evidence. In re Davis' Will, 14 N.J. 166, 169-70, 101 A.2d 521 (1953). Further, N.J.S.A. 2A:81-2, imposes a clear and convincing burden of proof on those making a claim against a representative of an estate where that claim is supported by "oral testimony of a promise, statement or act." Under this statute, one trying to reform a will on the basis of the testator's mistake of fact must prove the mistake by *661 clear and convincing evidence. In Re Will of Araneo, 211 N.J.Super. 456, 460, 511 A.2d 1269 (Law Div.1985), aff'd, 213 N.J.Super. 116, 516 A.2d 638 (App.Div.), certif. denied, 107 N.J. 62, 526 A.2d 147 (1986).
In Re Polk, 90 N.J. 550, 449 A.2d 7 (1982), discussed the clear and convincing heightened burden of proof. The Supreme Court stated that "[t]he clear and convincing proof standard is generally used to assist the fact finding tribunal in adjudicating cases that involve circumstances or issues that are so unusual or difficult, that proof by a lower standard will not serve to generate confidence in the ultimate factual determination." Id. at 568, 449 A.2d 7. The Court further noted that "[t]he heightened burden of proof compensates for the difficulty in marshaling cogent evidence to establish or to defend against a claim." Ibid. Therefore, a heightened burden of proof should apply to situations that are "intrinsically complex and not readily amenable to objective assessment" or cases in "which reliable evidence is not generally available." Ibid.
So too here, where the only person who could explain what he wanted to accomplish by the Trust Agreement is dead. We conclude that a clear and convincing burden of proof for plaintiffs in malpractice actions who seek to contradict solemnly drafted and executed testamentary documents appropriately balances all the competing interests. Our skepticism for oral proofs in such situations is accommodated, yet, truly meritorious cases would not be precluded. Extrinsic evidence may be submitted in an attempt to establish malpractice. However, attorneys will not become insurers of beneficiaries' testamentary expectations. The clear and convincing burden fosters our strong policy that the language of testamentary instruments controls the disposition of property at death. By requiring the heightened burden of proof we also discourage fraudulent claims. Such a burden also deters the more common problem of suits based on the sincerely held belief that the claimant deserved more than the will provided. Nevertheless, if a legal malpractice claim is supported by clear and convincing evidence that establishes an error in capturing the testator's intent, the claim can succeed despite explicit conflicting language in the testamentary document.
We conclude that a clear and convincing burden of proof shall be required for certain well-defined legal malpractice claims. We do not subscribe to wholesale enhancement of the burden of proof in legal malpractice generally. In Part V of this opinion, we discuss the narrow exception we have crafted.

III.
Judge Schott applied collateral estoppel to plaintiff's claim and dismissed his complaint. As the Supreme Court explained in In Re Dawson, 136 N.J. 1, 20-21, 641 A.2d 1026 (1994), for the doctrine of collateral estoppel to apply, the party asserting the bar must show that: (1) the issue to be precluded is identical to the issue decided in the previous proceeding; (2) the issue was actually litigated in the prior action, i.e., there was a full and fair opportunity to litigate the issue in the prior action; (3) a final judgment on the merits was issued in prior proceeding; (4) the determination of the issue was essential to prior judgment; and (5) the party against whom preclusion is asserted was a party to or in privity with a party to the earlier proceeding.
Collateral estoppel, however, "must be applied equitably, not mechanically." In re Tanelli, 194 N.J.Super. 492, 497, 477 A.2d 394 (App.Div.), certif. denied, 99 N.J. 181, 491 A.2d 686 (1984). Moreover, because collateral estoppel is an equitable doctrine, it should only be applied when fairness requires. State v. Gonzalez, 75 N.J. 181, 191, 380 A.2d 1128 (1977). Or, as explained by the court in Continental Can Co. v. Hudson Foam Latex Prod. Inc., 129 N.J.Super. 426, 430, 324 *662 A.2d 60 (App.Div.1974), whether collateral estoppel applies depends on a variety of factors, "all of which are considered because they contribute to the greatest good for the greatest number so long as fairness is not sacrificed on that altar."
Some of the factors favoring application of issue preclusion are: conservation of judicial resources; avoidance of repetitious litigation; and prevention of waste, harassment, uncertainty and inconsistency. Gonzalez, supra, 75 N.J. at 190, 193, 380 A.2d 1128. In contrast, factors disfavoring application of collateral estoppel include: the party against whom preclusion was sought could not have obtained review of the judgment in the initial action; the quality or extensiveness of the procedures in the two actions were different; it was not foreseeable at the time of the initial action that the issue would arise in subsequent litigation; and the party sought to be precluded did not have an adequate opportunity to obtain a full and fair adjudication in the first action. Restatement (Second) of Judgments § 28 (1980).
In the present case, we have determined that the clear and convincing burden of proof applies to this malpractice action. Therefore, collateral estopped applies. Here, the issues in the two proceedings were identical, whether the Trust Agreement accurately reflected Harry's intent; second, the issue was actually litigated in the first proceeding because the probate judge heard cross motions for summary judgment after discovery and oral argument by the parties' attorneys; third, a final judgment on the merits was entered because the probate decision was affirmed by the Appellate Division and the Supreme Court denied certification; fourth, the issue was essential to the prior judgment because the ultimate issue the probate judge decided was whether the Trust Agreement accurately reflected Harry's intent; and fifth, the party against whom the doctrine was asserted was a party to the earlier proceeding, i.e., Leonard was a defendant in the probate action. Accordingly, Judge Schott correctly precluded plaintiff's action.

IV.
We further point out that even if we declined to require a clear and convincing burden in the malpractice action, it might still be appropriate to apply collateral estoppel. Generally, the rationale for not applying collateral estoppel in these situations is that plaintiff may be able to establish a case in the second proceeding under the lesser burden, despite failing to meet the more rigorous burden in the first proceeding. We found no New Jersey state case involving collateral estoppel between two civil actions where the first action had a higher burden of proof than the second. Most New Jersey cases relied on by plaintiff, pressing the inapplicability of collateral estoppel, involve criminal cases followed by civil proceedings. For example, in State v. McCoy, 145 N.J.Super. 340, 344-45, 367 A.2d 1176 (App.Div.1976), the court held that the defendant's acquittal of illegal gambling charges did not bar re-litigation, in a subsequent civil forfeiture proceeding, of whether an illegal gambling operation existed because the acquittal could have rested on an issue foreign to a forfeiture proceeding and this proceeding was a civil action with a different standard of proof.
Plaintiff further cites cases reflecting the New Jersey courts' reluctance to give preclusive effect to a guilty plea in subsequent civil litigation. As the court in State v. Gonzalez, 273 N.J.Super. 239, 243-44, 641 A.2d 1060 (App.Div.1994), aff'd, 142 N.J. 618, 667 A.2d 684 (1995), noted, the reluctance to give preclusive effect to guilty pleas in subsequent civil litigation stems from two bases: first, a concern for the consequences this approach would have on an innocent victim's attempt, in a civil context, to seek compensation for injuries received from conduct that supported a guilty plea; and second, a concern *663 about the sufficiency and fairness of the plea process itself.
Plaintiff cites, in support of his position, Restatement (Second) of Judgments § 28(4) (1980), which provides as follows:
Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
....
(4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action[.]
Although no New Jersey cases have cited this particular exception, the Supreme Court has recognized and followed three of the other exceptions contained in the Restatement. Hernandez v. Region Nine Housing Corp., 146 N.J. 645, 659-60, 684 A.2d 1385 (1996). On its face, the fourth Restatement exception raises the question of whether a clear and convincing burden of proof is a sufficiently "significant[ ] heavier burden" than preponderance and, therefore, precludes the application of collateral estoppel. Furthermore, a comment to the Restatement raises the possibility of applying collateral estoppel despite differences in burdens of proof:
To apply issue preclusion in the cases described in Subsection (4) would be to hold, in effect, that the losing party in the first action would also have lost had a significantly different burden been imposed. While there may be many occasions when such a holding would be correct, there are many others in which the allocation and weight of the burden of persuasion (or burden of proof, as it is called in many jurisdictions) are critical in determining who should prevail. Since the process by which the issue was adjudicated cannot be reconstructed on the basis of a new and different burden, preclusive effect is properly denied. This is a major reason for the general rule that, even when the parties are the same, an acquittal in a criminal proceeding is not conclusive in a subsequent civil action arising out of the same event.
[Restatement (Second) of Judgments § 28 comment f (1980) (emphasis added).]
In In Re Braen, 900 F.2d 621, 624 (3d Cir.1990), cert. denied, 498 U.S. 1066, 111 S.Ct. 782, 112 L.Ed.2d 845 (1991), the Third Circuit stated, without discussion, that "disparate burdens of proof foreclose application of the issue preclusion doctrine." This statement was followed by a footnote citing Restatement (Second) of Judgments § 28(4)(1980). Id. at 624-25 n. 1. Although Braen recognized and followed the burden of proof exception to the application of collateral estoppel, the first proceeding in Braen was a malicious prosecution suit with a preponderance burden, which was followed by a discharge in bankruptcy suit that had a clear and convincing burden. Id. at 624. Thus, the two suits in Braen involved burdens that went from less stringent to more stringent rather than vice versa.
However, the Ninth Circuit in United States Aluminum Corp./Texas v. Alumax, Inc., 831 F.2d 878 (9th Cir.1987), cert. denied, 488 U.S. 822, 109 S.Ct. 68, 102 L.Ed.2d 45 (1988), declined to apply collateral estoppel to a subsequent civil action with a lesser burden of proof. In this case, the court held that a successful defendant in a patent infringement action was not collaterally estopped in a subsequent malicious prosecution action by its previous failure to establish that the patent infringement action was brought in bad faith. Ibid. The Ninth Circuit concluded that issue preclusion did not apply because proof of bad faith in the patent infringement action required clear and convincing evidence, while proof of bad faith in the malicious prosecution case required a preponderance of the evidence. Id. at 880.
*664 In contrast, the Eighth Circuit did recognize the narrow exception from comment f of Restatement (Second) of Judgments § 28(4) (1980), and did not find the United States Aluminum case dispositive on the collateral estoppel issue. Lane v. Sullivan, 900 F.2d 1247, 1252 (8th Cir.), cert. denied, 498 U.S. 847, 111 S.Ct. 134, 112 L.Ed.2d 101 (1990). In Lane, the Lanes initially brought suit against a Special Panel that had been appointed to run the Lanes' companies during bankruptcy, alleging that the Panel breached its fiduciary duties. Id. at 1248-49. This suit ("Lane 1"), which required proof by clear and convincing evidence, failed. Id. at 1249.
Subsequently, the Lanes brought a legal malpractice claim against their attorney and his firm for alleged wrongdoing in the bankruptcy and sale of the Lanes' poultry companies. Id. at 1247. On appeal, the Eighth Circuit held that the Lanes were collaterally estopped from pursuing their legal malpractice claim. Id. at 1248.
In reaching its conclusion that the Lanes' legal malpractice claim was precluded, the Eighth Circuit quoted both subsection four of the Restatement (Second) of Judgments and comment f thereto. Id. at 1251. After noting that subsection four of the Restatement did support the Lanes' claim that collateral estoppel was inapplicable, the court noted that comment f "reveals that there is room for exception to the black letter law outlined above, although such exceptions are not suggested." Ibid.
The Eighth Circuit determined that the specificity and particularity of the trial court's findings in Lane 1 made the exception in comment f of the Restatement applicable to the malpractice action because the Lanes would have lost even if a significantly different burden of proof were imposed. Id. at 1252-53 n. 7, 1253.
The Sixth Circuit applied a similar analysis in Marlene Industries Corp. v. NLRB, 712 F.2d 1011 (6th Cir.1983), where the NLRB initially sought to hold Marlene Industries in contempt for violating an order against unfair labor practices. In this initial suit, the NLRB failed to prove by clear and convincing evidence that Marlene Industries was guilty of contempt. Id. at 1014. In a subsequent unfair labor practice proceeding, Marlene Industries successfully precluded the NLRB's claim on collateral estoppel grounds, despite the lower preponderance burden in this second action. Id. at 1016.
In this matter, the probate judge stated, in reference to the Beck letter, that this "letter does provide clear and convincing proof, that is, clear and convincing proof that Harry Pivnick intended exactly what the instruments state." The probate judge further indicated that "there can be no doubt that the intent was in accord with [Audrey's] claim in this case." Like Lane, this seems to be a finding that the documents clearly and convincingly reflect Harry's intent.
Nevertheless, we choose not to decide this case on this basis and leave to another day the question whether collateral estoppel bars a civil case with a preponderance burden that was preceded by a civil case in which the clear and convincing burden applied. We choose not to decide on this basis because, as we have explained in Part III, we agree with Judge Schott that in this particular malpractice matter, the appropriate burden of proof was clear and convincing.

V.
In this case, plaintiff attempted to prove malpractice by contradicting a solemn document that was clear on its face. Plaintiff submitted to Judge Schott Ms. Roper's certification in which Ms. Roper claimed to have communicated Harry's testamentary instructions to Beck. This certification was additional proof submitted by Leonard in the second proceeding that was not presented in the first. In the probate proceeding, Leonard claimed to have communicated Harry's instructions to Beck *665 and Leonard submitted only Beck's letter as corroborative proof. A party with the opportunity to present whatever evidence he or she chooses to a competent tribunal, however, has had a full and fair opportunity to litigate. Kozlowski v. Smith, 193 N.J.Super. 672, 675, 475 A.2d 663 (App. Div.1984). Therefore, Leonard's attempt to submit additional proof in the second proceeding was of no moment.
Furthermore, plaintiff argues that importing into legal malpractice litigation the same clear and convincing standard, which, according to plaintiff, cannot be met for reformation of written documents, will "inevitably and invariably deny relief" to legal malpractice claimants. We reject this contention.
We have not hesitated to change the burden of proof in certain cases when warranted. See, In re Pennica, 36 N.J. 401, 177 A.2d 721 (1962) (discussing burden of proof in attorney disbarment action). There is no reason to question the preponderance standard in most legal malpractice litigation. This enhanced burden of proof will apply only in certain limited legal malpractice claims.
The Trust Agreement challenged by plaintiff was prepared by a lawyer for a now deceased client. This document was formally prepared and should have been carefully reviewed before being signed. There is no claim that the document contained any intrinsic defect that thwarted the testator's intent. There are no claims that the attorney made any mistake in execution of the document, and there is no claim that the drafting lawyer or his firm had any conflict of interest. In this case, an heir wishes to prove solely that the testator's intent was exactly the opposite of what was clearly stated in the Trust Agreement. For the reasons explained above, we conclude that in such cases, the legal malpractice claimant must meet a clear and convincing burden of proof.
In our opinion, this result properly balances the rights of plaintiffs against the care that is necessary to prepare and execute solemn testamentary documents. We cannot and will not trivialize the sanctity of such documents. Thus, because the burdens of proof in the probate and legal malpractice matters are the same, collateral estoppel applies, and Leonard's malpractice case is barred.
Affirmed.