**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1510-15T3

IN THE MATTER OF THE
ESTATE OF HAROLD
BECKER, deceased.

_____

Argued December 15, 2016 — Decided  February 27, 2017

Before Judges Lihotz and Hoffman.

On appeal from Superior Court of New Jersey,
Chancery Division, Probate Part, Atlantic
County, Docket No. 116042.

Richard F. Klineburger, III, argued the cause
for appellant Estate of Scott Becker
(Klineburger & Nussey, attorneys; Mr.
Klineburger and Carolyn G. Labin, on the
briefs).

John J. Palitto, Jr., argued the cause for
respondent Lynda Becker Kelly (Price & Price,
LLC, attorneys; Mr. Palitto, on the brief).

Brandon Becker, respondent pro se, join in the
brief of respondent Lynda Becker Kelly.

Respondent Stuart Becker has not filed a
brief.

PER CURIAM

Defendant Estate of Scott Becker[1] appeals from an October 28, 2015 Probate Part order denying defendant's motion for a new trial. Prior to this motion, on July 29, 2015, the Probate Part entered an order in favor of plaintiff Lynda Becker Kelly, the ex-wife of Harold Becker (the testator), admitting to probate a copy of his March 6, 2012 will. For the reasons that follow, we affirm the denial of defendant's motion for a new trial.

I.

We discern the following facts and procedural history from the record on appeal. Plaintiff and the testator married in 1983 and divorced in 2000. They reconciled in 2005, living together unmarried until the testator's death in 2013.

On March 6, 2012, the testator executed a will prepared by his longtime attorney, Mark Roddy. The testator named plaintiff as his executor and further provided, "I hereby bequeath my one-half interest in my former home[2] to my youngest son, [Brandon,]" along with "[a]ny mon[ies], property, or items not here and above

---

[1]  On October 24, 2016, we entered an order changing appellant from Scott Becker to the Estate of Scott Becker. For ease of reference, we refer to both Scott Becker and his estate as "defendant," and we refer to the testator's other two sons, Stuart Becker and Brandon Becker, by their first names.

[2]  The home was a townhouse in Philadelphia. The testator's first wife, Frances, owned the other one-half interest.

described[.]"  The testator signed the will in the presence of Roddy, two attesting witnesses, and a notary public.

On August 21, 2013, the testator sustained serious injuries in a car accident; one month later, he succumbed to his injuries, passing away at the age of seventy.  His surviving heirs at law were his three sons: Stuart, Scott, and Brandon.  Stuart and Scott are his sons by his first wife, while Brandon is his son by plaintiff.

Brandon has a history of incarcerations stemming from his long-term use of illegal drugs.  At the time of his father's death, Brandon had been incarcerated since April 2012.

On May 29, 2014, plaintiff filed a verified complaint seeking to probate a copy of the March 2012 will.  Plaintiff certified the testator was the only individual with knowledge of the location of the original will, and she was unable to produce the original document.

Stuart and Scott Becker filed a joint answer to the complaint on July 18, 2014.  Along with the answer, Stuart filed a verification denying "the existence of any will," and stating, "It is my understanding that my father had destroyed any will prior to his death because he wanted all of his children to share equally in any Estate that he would leave."  Stuart further asserted his father was not of sound mind and body when he may have considered

composing a will, claiming "undue influence by [plaintiff], especially at times during the on-going intoxication of my deceased father." According to Stuart, his father was "addicted to narcotics for the vast majority of his adult life." Stuart also asserted he and Scott were not estranged from their father, and argued, "It makes no sense to exclude his two sons and to award our family home to another person." Defendant later abandoned the undue influence claim.

Judge Raymond Batten conducted a trial on July 21 and 29, 2015, hearing testimony from Roddy, plaintiff, Brandon, and Scott. Roddy testified to a long history with the testator, serving as his personal attorney since the 1980s. According to Roddy, on August 3, 2011, the testator came to his office to discuss his will. Roddy drafted the will, which the testator later signed at Roddy's office on March 6, 2012. On March 9, 2012, Roddy sent the testator the original will and a copy and retained a photocopy for his own records. Roddy stated he believed the testator had the capacity to execute the will, and said he would not have initiated the process if the testator lacked this capacity.

Roddy further testified to the contents of the will, stating Brandon was the sole beneficiary of the estate. Roddy said he had "detailed discussions" with the testator, and "it was his position that Brandon would never be able to hold and keep a real job once

he got out of jail, and all of his other relatives were well capable of taking care of themselves. For that reason . . . he made him the beneficiary."

Plaintiff testified the testator showed her the will upon receiving it from Roddy by mail. He told her he was leaving everything to Brandon because she could care for herself. Plaintiff further testified she saw the testator mail the original will to Brandon's prison address, noting, "I knew where it was." Plaintiff said the testator mailed the will to Brandon on the same day he received it from Roddy, placing the mailing date in March 2012.

Brandon testified, however, that he was not yet in prison in March 2012. Instead, he stated he received the original will, a letter, and a copy of the will from his father in October 2012 while he was in prison. He then modified his statement and said he only received the original will and made a copy of it himself. Brandon stated his father visited him at prison "every weekend" in 2012, and he also visited him in jail after sending him the will.

According to Brandon, nine days after his father's car accident, he received an institutional charge and was placed in administrative detention. He was then transferred to a different prison facility on September 19, the day before his father died.

Brandon said the authorities at the new facility "tear things up," prompting him to mail the original will to his childhood friend A.J.,[3] approximately two weeks after arriving at the new facility.

Brandon said A.J. sent him two letters after he mailed her the will — one letter stated she received the package, and another promised to keep the will safe and inform Brandon of her new address. However, Brandon testified he wrote "multiple" additional letters to A.J. requesting she mail the will back to him or his mother. Brandon said he sent letters to both A.J. and her sister, but he did not receive responses. He also had a friend travel to A.J.'s house, which appeared vacant. At the second trial date, Brandon stated after he lost contact with A.J., approximately one year prior to trial, he received a letter from A.J.'s sister, who was also incarcerated, promising to keep the will safe. He said he lost contact with her after she was released from prison.

Scott testified that in 2012, his father told him he was planning his will and he wanted to leave his share of Scott's mother's home to Brandon. Scott objected strongly to this plan. His father later told Scott he completed the will. However, Scott testified he had a subsequent conversation with his father, who told him the will was "gone," and he "wiped [his] ass with it."

---

[3] We use initials to protect the privacy of this witness.

At the conclusion of testimony on July 29, 2015, Judge Batten rendered an oral decision. In delivering his opinion, the judge reviewed the testimony of the witnesses. The judge found, although the testimony of Brandon and plaintiff differed as to when the testator mailed the will, the testator relinquished his possession in either scenario.

Judge Batten further observed that neither Scott nor Stuart "did anything suggestive of respective assertions of entitlement to administration" between the testator's death and filing their answer to plaintiff's complaint. This "silence both in deed and word" the judge found "probative."

Regarding the will itself, Judge Batten found "the content of this will is consistent . . . with the testamentary intent provided by [the testator] clearly to Mr. Roddy." Specifically, Judge Batten found the testator intended to leave his full estate to Brandon because he was incapable of caring for himself.

Last, Judge Batten found the "presumption of revocation" did not apply to the facts at trial because the testator surrendered his possession and access to the will upon mailing it to Brandon. From the record, the judge found no basis to conclude the testator destroyed the will or performed a revocatory act.

The judge then ruled:

> [O]n [these] findings of fact, substantially
> uncontroverted . . . I am satisfied that [the

7

> will] constitutes a true and accurate copy of
> the last will and testament of [the testator],
> that it was lost, that it has not been revoked,
> and that it is therefore properly submitted
> for probate . . . .

Judge Batten then entered the order admitting a copy of the will to probate; the order also appointed plaintiff to administer the estate.

On August 17, 2015, defendant filed a motion for a new trial accompanied by a brief and a supporting certification by defendant's attorney. In the certification, the attorney stated after the judge announced his decision, he hired an investigator "to ascertain the accuracy of testimony given at trial." The attorney alleged the investigator discovered "material" information that "directly conflict[ed]" with certain trial testimony. He claimed he could not have procured this new evidence during discovery because the investigation concerned "facts to which parties testified at trial."

On October 16, 2015, Judge Mark Sandson, replacing the recently retired Judge Batten, heard and denied defendant's motion. Judge Sandson found defendant failed to "indicate why this information was newly discovered," noting defendant chose to forgo deposing either plaintiff or Brandon during discovery. The judge then concluded:

> [P]laintiffs proved to the satisfaction of
> Judge Batten that Brandon Becker had the

original will, forwarded it to an acquaintance who cannot be located, and as such the original will was lost. The result of the trial was not a miscarriage of justice as needed under the rule, but rather the [c]ourt, insuring the wishes and intent of the testator to be followed[.] I cannot grant the motion of the defendants for a new trial.

Judge Sandson formalized his decision in an order dated October 28, 2015. This appeal followed.

II.

On appeal, defendant argues a new trial is warranted because (1) the trial court should have applied the presumption of revocation, and (2) plaintiff failed to provide clear and convincing evidence to overcome this presumption. Defendant also argues Judge Sandson should have granted a new trial or, "at a minimum," taken limited testimony on evidence allegedly refuting Brandon's claims about the location of the original will. We disagree.

"On a motion for a new trial in an action tried without a jury, the trial judge may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment." R. 4:49-1(a). The trial court should not grant a new trial unless "it clearly appears that there was a miscarriage of justice under the law." Dolson v. Anastasia, 55 N.J. 2, 7 (1969). A "miscarriage of justice"

9                                                    A-1510-15T3

has been described as a "'pervading sense of "wrongness" . . . [which] can arise . . . from manifest lack of inherently credible evidence to support the finding, obvious overlooking or undervaluation of crucial evidence, [or] a clearly unjust result. . . .'"

[Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 521 (2011) (alterations in original) (quoting Lindenmuth v. Holden, 296 N.J. Super. 42, 48 (App. Div. 1996), certif. denied, 149 N.J. 34 (1997)).]

On appellate review, we apply essentially the same "miscarriage of justice" standard as the trial court. Hill v. N.J. Dep't of Corr. Comm'r Fauver, 342 N.J. Super. 273, 302 (App. Div. 2001), certif. denied, 171 N.J. 338 (2002); R. 2:10-1. We must provide "'due deference' to the trial court's 'feel of the case,' with regard to the assessment of intangibles, such as witness credibility." Jastram v. Kruse, 197 N.J. 216, 230 (2008) (quoting Feldman v. Lederle Labs., 97 N.J. 429, 463 (1984)). However, "a trial court's determination is 'not entitled to any special deference where it rests upon a determination as to worth, plausibility, consistency or other tangible considerations apparent from the face of the record with respect to which he is no more peculiarly situated to decide than the appellate court.'" Caldwell v. Haynes, 136 N.J. 422, 432 (1994) (quoting Dolson, supra, 55 N.J. at 7).

In the event a decedent's original will cannot be located, the party asserting the existence of the missing will must

demonstrate their claim with "clearness and certainty." <u>In re Willitt's Estate</u>, 46 <u>A.</u> 519, 527 (Prerog. Ct. 1900). The proponent of the lost will must establish the intent of the document "by clear and convincing evidence." <u>Pivnick v. Beck</u>, 326 <u>N.J. Super.</u> 474, 483-84 (App. Div. 1999), <u>aff'd o.b.</u>, 165 <u>N.J.</u> 670 (2000). "This clear and convincing evidence must be shown with reference to the execution of the alleged lost will, the contents of said will, and the circumstances under which the will was lost, stolen, or destroyed." <u>In re Will of Roman</u>, 80 <u>N.J. Super.</u> 481, 483 (Cty. Ct. 1963).

Under certain circumstances, when a missing will cannot be located upon the testator's death, a rebuttable presumption arises that the testator destroyed the will with the intent to revoke it. Our former Court of Errors and Appeals described the presumption as follows:

> The law of this state applicable to the establishment of lost wills is well defined. If such a will was last seen in the custody of the testatrix or she had access to it the fact that it cannot be found after her death raises the presumption that she destroyed it <u>animo revocandi</u>. This presumption may be rebutted but in order so to do the evidence must be clear, satisfactory and convincing and the burden is on the proponents. The proof necessary to rebut the presumption of revocation must be sufficient to exclude every possibility of a destruction of the will by the testatrix herself.

11

> [In re Will of Davis, 127 N.J. Eq. 55, 57 (E.
> & A. 1940) (quoting In re Will of Bryan, 125
> N.J. Eq. 471 [(E. & A. 1939)]).]

See also In re Estate of Jensen, 141 N.J. Eq. 222, 225 (Prerog. Ct. 1947) (stating proof offered to rebut the presumption "must be sufficient to exclude every possibility of a destruction of the will by the [testator]"), aff'd, 142 N.J. Eq. 242 (E. & A. 1948); In re Will of Calef, 109 N.J. Eq. 181, 184 (Prerog. Ct. 1931), aff'd o.b., 111 N.J. Eq. 355 (E. & A. 1932), cert. denied sub nom., Neely v. Stacy, 288 U.S. 606, 53 S. Ct. 397, 77 L. Ed. 981 (1933); In re Estate of Ehrlich, 427 N.J. Super. 64, 75-76 (App. Div. 2012) (noting proof must be "clear satisfactory, and convincing to rebut the presumption of the original's revocation or destruction" (citations omitted)), certif. denied, 213 N.J. 46 (2013).

If a will is shown to be out of the testator's possession, the party asserting revocation "must show that it came again into his custody, or was actually destroyed by his direction." Will of Calef, supra, 109 N.J. Eq. at 185 (citations omitted). However, this standard is "qualified by the rule of access, or opportunity of repossession, and possibility, not probability, of such access is controlling." Ibid. (citations omitted). This rule "does not require an actual tracing of the will back into the possession of the testatrix, but is satisfied by a showing of access, that is,

opportunity of repossession, and upon such showing the presumption of revocation remains until rebutted by evidence which is clear, convincing and satisfactory." Id. at 186 (emphasis in original).

In this case, Judge Batten found the presumption of revocation did not apply because the testator surrendered his possession and access to the will. The judge stated:

> At whichever date [the testator mailed the will to Brandon] . . . [the testator] did not enjoy possession and did not enjoy access to the original will himself. That the will may have been in . . . the prison cell of Brandon Becker on the occasion of some visit by [the testator] proves nothing more than that. It is not affirmative proof that [the testator] somehow had access to a will [or] that he . . . even knew [it] was in Brandon Becker's cell. . . .

Defendant argues, because the testator had the possibility of access to the will through his visits with Brandon in prison, the presumption of revocation applies. Defendant relies on Will of Calef, where the court applied the presumption because the testatrix knew where the will was, and although she did not have custody of it, she "could, if she so desired, have obtained possession of it and destroyed it." Will of Calef, supra, 109 N.J. Eq. at 199. Defendant further argues the presumption of revocation "remained in place" because Brandon was the chief beneficiary of the will, allegedly possessed it when the testator

died, and had a strong interest in admitting it to probate. <u>See</u> <u>id.</u> at 186.

Given our deferential standard of review, we reject these arguments. Judge Batten heard the trial testimony and concluded there was insufficient evidence showing the testator had access to the will or even knew of its location in Brandon's cell. Judge Sandson then reviewed this decision and found no miscarriage of justice warranting a new trial. We concur. Further, our review of the record convinces us that it fully supports Judge Batten's conclusions. Although the testator allegedly visited Brandon in prison, there was no indication he could have obtained the will if he so desired. While Brandon's status as the chief beneficiary means "less evidence of access is necessary to sustain" the presumption of revocation, <u>Will of Calef</u>, <u>supra</u>, 109 <u>N.J. Eq.</u> at 186, here, there was still insufficient evidence of access. There was no evidence the will document was present during any visit between Brandon and the testator. We find no basis to disturb Judge Batten's finding that the presumption of revocation does not apply. As such, defendant's additional claim that Judge Batten improperly placed the burden of proof on Scott and Stuart lacks merit.

Defendant also argues Scott's testimony — that the testator said the will was "gone" — proved the testator destroyed the will

14

with the intent to revoke it. However, Judge Batten directly addressed this testimony in his oral decision, finding the testator's alleged statement was "as likely a comment of appeasement as opposed to an accurate memorialization of affirmative and knowing destruction of the original will." We defer to Judge Batten's assessment of the witnesses at trial. Jastram, supra, 197 N.J. at 230.

Next, defendant argues plaintiff "failed to present clear and convincing proof to overcome the presumption of revocation in this matter." Defendant contends plaintiff offered conflicting explanations regarding the location of the will; indeed, plaintiff first certified in her complaint that only the testator knew the location of the will, but she later testified she witnessed the testator mail it to Brandon. Defendant further highlights other facts and instances of conflicting testimony to challenge plaintiff and Brandon's credibility. Defendant contends that in light of these credibility issues, Judge's Batten's decision to probate the will constitutes a miscarriage of justice.

This argument also lacks merit. As noted, the main thrust of defendant's argument fails because the presumption of revocation does not apply. Moreover, assuming arguendo that all of defendant's credibility challenges are correct, we still find the result does not constitute a miscarriage of justice. Most

15

persuasive is Roddy's testimony regarding the testator's clear intention to leave his entire estate to Brandon. We agree with Judge Sandson's assessment that Judge Batten "insur[ed] the wishes and intent of the testator." Therefore, we find no basis to order a new trial.

Last, defendant argues Judge Sandson erred by denying his motion for a new trial due to newly discovered evidence. Defendant contends that prior to trial he relied on plaintiff's complaint, which stated only the testator knew the location of the original will. Based on this information, defendant claims he had "no reason to think" plaintiff and Brandon would testify that Brandon received the will in prison and then sent it A.J or her sister. Therefore, defendant argues the trial court should have granted a new trial or taken limited testimony based on the private investigator's new information regarding A.J., which would have changed the result in this matter.

We reject this argument. The new evidence offered by defendant consists of A.J and her sister's criminal histories and an interview between A.J. and the investigator, during which A.J. allegedly denied receiving the will from Brandon. Defendant claims this "determinative" information proves Brandon perjured himself during trial and contradicts Judge Batten's finding that the testator did not destroy his will. The new evidence offered by

16

defendant comes too late to merit consideration in this case. The alleged information represents additional facts and circumstances that were ascertainable before trial through discovery. Having made the strategic decision to forego discovery, defendant has no basis for requesting "a second bite of the apple" by virtue of a new trial. State v. Bianco, 391 N.J. Super. 509, 517 (App. Div.), certif. denied, 192 N.J. 74 (2007).

Moreover, Roddy's testimony clearly confirmed the testator's intent to bequeath his estate to Brandon. Judge Batten's conclusion honored the testator's intent. Therefore, we find no miscarriage of justice to warrant a new trial.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1510-15T3