**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2652-17T1

IN THE MATTER OF THE ESTATE
OF HANS KOBIN,
     Deceased.

_____

Argued May 22, 2019 – Decided  July 5, 2019

Before Judges Alvarez and Reisner.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. P-000012-17.

William R. Connelly argued the cause for appellant Peter Erik Davis (Law Offices of William R. Connelly, LLC, attorneys; William R. Connelly of counsel and on the briefs).

Russell J. Fishkind argued the cause for respondent Nicole A. Onni (Saul Ewing Arnstein & Lehr, LLP, attorneys; Ronald Philip Colicchio, on the brief).

PER CURIAM

In this will contest, plaintiff Peter Erik Davis appeals from a January 2,

2018 order granting summary judgment in favor of defendant Nicole A. Onni,

the executrix of the estate of Hans Kobin.  On appeal, plaintiff presents the following point of argument:

> THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GRANTING SUMMARY JUDGMENT INSTEAD OF CONDUCTING AN EVIDENTIARY HEARING.

We review the summary judgment order de novo, using the same Brill[1] standard employed by the trial court.  Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405-06 (2014).  After reviewing the motion record in light of that standard, we affirm for the reasons stated by Judge Menelaos W. Toskos in his thorough written opinion issued with the order.  We add only the following brief comments.

Hans Kobin (decedent or grandfather) passed away in August 2016, at the age of ninety-five.  Plaintiff is one of decedent's four grandchildren.  In a 2010 will, decedent left his entire estate to his wife.  However, the will provided that if his wife predeceased decedent, plaintiff would inherit $10,000 and the remainder of the estate would go to decedent's daughter Tiina and his son Mart.[2]

---

[1] Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

[2] The wife passed away in October 2015.

The 2010 will did not leave anything to decedent's three other grandsons. The will named plaintiff as executor.

There is evidence that several years later, a rift developed between plaintiff and his grandfather. In a February 16, 2016 email to his grandfather, plaintiff stated that, due to his mother Tiina's "uncontrollable behavior" he would "never invite her into my home again." Tiina died on March 15, 2016. In a May 5, 2016 email from plaintiff to his grandfather, plaintiff acknowledged that the grandfather had told plaintiff's brothers that he was "disappointed with the man that [plaintiff had] become." In the email, plaintiff told his grandfather that he found the statement "deeply offensive" and asked him to "[p]lease explain (in English) so that there are not misunderstandings regarding this very serious matter."[3]

The record also contains a letter decedent wrote to a friend on May 11, 2016, complaining that at Tiina's funeral, plaintiff "nixed" as "not needed" a suggestion to have a "Scout's Friendship Circle" in her honor. In the letter, decedent told his friend that plaintiff's statement "really hit me as an insult."[4]

---

[3] Decedent spoke both Estonian and English.

[4] In the same letter, decedent told the friend that before her death, Tiina had reminded him that he needed to update his will.

A-2652-17T1

Decedent's son Mart, as well as defendant, her husband, and plaintiff's brother Steven, also attested to the falling-out between plaintiff and decedent.

On March 26, 2016, after the deaths of his wife and daughter, decedent prepared and signed a holographic will, naming defendant as executrix. Defendant, then a newly-admitted attorney, was married to another of decedent's grandsons, Mark Fischgrund. There is no dispute that decedent liked and respected defendant and was very proud that she had become an attorney. She, in turn, viewed him as a surrogate grandfather. It is undisputed that decedent wrote and signed the holographic will by himself, sitting alone in his study, although he had consulted with defendant before preparing it.

The holographic will left decedent's bank accounts, stocks, and bonds to defendant's husband Mark. The will left decedent's house and all other remaining assets to Mark and decedent's son Mart, in equal shares, and did not leave a bequest for plaintiff or decedent's two other grandsons.[5] Several weeks after decedent wrote the holographic will, he asked defendant to prepare a formal typed will for his signature. Decedent reviewed the typewritten will and handwrote a few minor corrections. After defendant made the corrections,

_____

[5] Steven, one of the disinherited grandsons, testified that he "didn't have a good relationship with [his] grandfather." The fourth grandson was a drug addict who stole from decedent and whom decedent had banished from his house.

decedent signed the will on May 14, 2016. The formal will contained the same essential testamentary dispositions as the holographic will.

Judge Toskos found that defendant and decedent were in a confidential relationship because she acted as his attorney, and there was at least a slight suspicious circumstance because her husband was a beneficiary. See In re Estate of Stockdale, 196 N.J. 275, 303-04 (2008). Judge Toskos reasoned that, as a result, the burden shifted to defendant to prove by clear and convincing evidence that the will was not the product of undue influence. See ibid.; Haynes v. First Nat'l State Bank of N.J., 87 N.J. 163, 176-77 (1981). However, the judge also found defendant carried that burden, and plaintiff produced nothing beyond speculation in response. The judge found no evidence that defendant exercised undue influence or that decedent was susceptible of such influence. He found that when decedent wrote the holographic will and then signed the formal will, he was mentally capable and strong-willed:

> In the final months of his life, the evidence shows [d]ecedent paid his own bills, managed his own money, invested in stocks, and routinely used a computer. . . . He was "extremely" intelligent until his dying day, was "sharp" and "stubborn" and not "weak or feebleminded." He was opinionated and not easily persuadable.

A-2652-17T1

In other words, the usual hallmarks of undue influence were notably missing from the case.

Citing In re Davis' Will, 14 N.J. 166, 169 (1953), Judge Toskos concluded that there was no evidence to overcome defendant's proofs. The judge found that plaintiff "cannot prevail because [d]efendant has assembled the requisite clear and convincing evidence that [d]ecedent was competent and exercised free agency when executing the Wills. . . . With all discovery complete and trial imminent, [p]laintiff's evidence still amounts to just speculation, innuendo, and unsupported hunches about [d]efendant's improper interference."

Our de novo review of the entire record supports Judge Toskos's findings of fact and conclusions of law. The evidence was so one-sided that summary judgment for defendant was the appropriate disposition. See Brill, 142 N.J. at 533.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2652-17T1